Docket No. 80377–Agenda 4–September 1997.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.

 ELTON L. WILLIAMS, Appellant.

Opinion filed January 23, 1998.

CHIEF JUSTICE FREEMAN delivered the opinion of the court:

Following a jury trial in the circuit court of Will County, defendant, Elton L. Williams, was convicted of first degree murder arising from the shooting death of police officer Timothy Simenson. At a separate sentencing hearing, the same jury found defendant eligible for the death penalty. The jury also found that there were no mitigating factors sufficient to preclude imposition of that sentence. The trial judge accordingly sentenced defendant to death. Defendant's sentence has been stayed pending direct review by this court. Ill. Const. 1970, art. VI, §4(b); 134 Ill. 2d Rs. 603, 609(a). For the reasons which follow, we affirm defendant's conviction and sentence.

BACKGROUND

We here provide the relevant facts leading to defendant's arrest and conviction. Other facts will be provided as they pertain to the issues discussed.

On September 28, 1994, shortly after midnight, Bill Chaney parked his car in the lot of the Arbor Club apartment complex and walked to the entrance of his apartment building at 1620 Arbor Club in Crest Hill, Illinois. He noticed a white car with its motor running, but saw no one in it. As Chaney approached the entrance of his building, Elton Williams, the defendant, ran towards him, pointed an altered .22-caliber rifle at him, and demanded his wallet. Chaney tossed his wallet, fled to his apartment, and dialed 911.

At 12:23 a.m., Jane Randolph, emergency dispatcher for the Crest Hill police department, answered Chaney's call. Chaney told Randolph he was robbed at gunpoint by a black man wearing a black jacket. He also mentioned the possible involvement of a white car.

At the time of Chaney's call, Sergeant Simenson and Officer Evanoff were parked in their respective squad cars near Chaney's apartment complex. Upon hearing the call, they immediately drove towards the Arbor Club complex, where they saw a black male driving a white car out of the parking lot. Simenson followed the white car; Evanoff drove to Chaney's residence. Simenson reported the license plate to Randolph and she advised him that the plates were registered to a 1989 Ford. Simenson reported that he was going to stop the car at Theodore and Burry Circle. Officer Ralph Smith also heard the call and went to assist Simenson.

When Officer Smith arrived at Theodore and Burry Circle, Simenson was standing outside of the white car with a black male. Simenson reported the male's name as Gregory Shaw and reported the vehicle identification number of the car. Simenson then shined his flashlight inside the car, removed the keys, and instructed Shaw to move to the rear of the car. Rather than comply, Shaw sat, inexplicably, on the trunk of the white car. Simenson told Shaw to get off the trunk and to stand next to Simenson's squad car, which was parked directly behind them. Shaw slid down from the trunk, but remained there for a few seconds before moving to the squad car.

Simenson unlocked the trunk and lifted the trunk deck, holding the keys in his right hand and a flashlight in his left. As the trunk deck rose, the barrel of a gun simultaneously emerged from within the trunk. As Simenson looked into the trunk, defendant shot Simenson twice in the face. Defendant then aimed the gun at Officer Smith, but the gun jammed. Defendant jumped out of the trunk and continued to aim the gun at Officer Smith. Smith and Evanoff shot defendant until he fell to the ground.

Defendant made a few attempts to get up, but Officer Evanoff ordered him to stay down. Evanoff asked defendant if he had any more weapons and defendant responded that he did not. Evanoff then holstered his weapon and handcuffed defendant.

Two ambulances arrived at the scene of the shooting. Paramedics detected a faint pulse on Simenson, but it was later determined that Simenson died as he fell to the ground. Paramedics treated defendant at the scene and transported him to the hospital; the police transported Shaw to jail. On October 5, 1994, defendant and Shaw were indicted for five counts of first degree murder and one count of armed robbery.

Following trial, a jury found defendant guilty of first degree (knowing) murder, first degree (intentional) murder, and felony murder. 720 ILCS 5/9–1(a) (West 1992). The trial court accepted all the verdicts and entered judgment on the intentional murder count, as well as the armed robbery count to which defendant had already pled guilty.

The jury also found defendant eligible for the death penalty, and following evidence in aggravation and mitigation, the jury further found no mitigation sufficient to preclude the imposition of the death penalty. Pursuant to the jury's finding, the trial court imposed a sentence of death.

ANALYSIS

Defendant raises various issues pertaining to both the guilt and sentencing phases of the trial.

Guilt Phase

Pretrial

Prior to trial, defendant sought to suppress a statement he made to paramedic Scott Shear while in the ambulance. At the hearing on defendant's motion to suppress, Shear testified that, “out of curiosity,” he asked defendant why he shot Officer Simenson. Defendant responded that he shot the officer because he did not want to go to jail. Defendant did not testify at the suppression hearing. The trial court found that defendant had not been given his 
Miranda
 rights at the time he made the statement. Nevertheless, the trial court found that the statement was made voluntarily.

Defendant contends that the trial court improperly found that his statement to paramedic Scott Shear was voluntary. Initially, defendant argues that we should conduct a 
de novo
 review of this argument. We note that, generally, a trial court's ruling on a motion to suppress evidence is subject to reversal only if manifestly erroneous. 
People v. Dilworth
, 169 Ill. 2d 195, 201 (1996). 
De novo
 review by this court is appropriate when neither the facts nor the credibility of witnesses is questioned. 
People v. Mitchell
, 165 Ill. 2d 211, 230 (1995). Because issues of credibility and fact are questioned in the present case, we must review this issue based on the manifest weight of the evidence standard.

Whether a statement is made voluntarily is judged by the totality of the circumstances. 
People v. House
, 141 Ill. 2d 323, 376 (1990). The test to determine whether a confession is voluntary is whether the accused's will was overborne at the time he confessed. 
People v. Kincaid
, 87 Ill. 2d 107, 117 (1981). If so, the confession cannot be deemed the product of a rational intellect and a free will. 
Kincaid
, 87 Ill. 2d at 117.

Defendant argues that he was so badly injured from the gunshot wound he sustained that his statement to the paramedic was not the product of a free and rational choice. In support of this argument, defendant cites 
People v. Strickland
, 129 Ill. 2d 550 (1989). In 
Strickland
, defendant sustained a gunshot wound to his finger. Although the police were aware of defendant's wound, they did not transport him to the hospital until after nine hours in custody. By the time defendant received treatment, he had made five incriminating statements. In upholding the trial court's suppression of defendant's statements, this court held that the defendant's statements were not voluntary because defendant could have concluded that further treatment was dependent on his cooperation with the police. 
Strickland
, 129 Ill. 2d at 558. See also 
People v. O'Leary
, 45 Ill. 2d 122 (1970) (holding that defendant's confession, coming so soon after being sprayed with tear gas, was involuntary and not a product of his free will).

Defendant also relies on 
Mincey v. Arizona
, 437 U.S. 385, 57 L. Ed. 2d 290, 98 S. Ct. 2408 (1978). In 
Mincey
, the investigators interrogated the defendant in the hospital a few hours after being seriously wounded by the police. Defendant was in intensive care and intubated. He had been given various drugs and was unable to speak. Defendant responded to questions by writing on pieces of paper; however, some of his answers were not entirely coherent. Although defendant repeatedly requested that the interrogation stop and requested a lawyer, police detectives continued to interrogate him for almost four hours. The Supreme Court stated that based on the record, defendant's statements were not the product of his free and rational choice. The court concluded that, weakened by pain and shock, and barely conscious, defendant's will was simply overborne. 
Mincey
, 437 U.S. at 401-02, 57 L. Ed. 2d at 306, 98 S. Ct. at 2418. See also 
Beecher v. Alabama
, 389 U.S. 35, 19 L. Ed. 2d 35, 88 S. Ct. 189 (1967) (holding that defendant's confession was a product of gross coercion where he was under the influence of morphine and police threatened to kill him if he refused to confess).

The defendant, like the defendants in 
Mincey
 and 
Strickland
, suffered the pain of gunshot wounds at the time he made the statement. However, those cases, as well as 
O'Leary
 and 
Beecher
, are clearly distinguishable from the instant case. At the suppression hearing, paramedics Shear and Laroy Aldridge testified that when they arrived at the scene, defendant became uncooperative and verbally abusive. The paramedics, nevertheless, provided immediate medical attention, examining defendant's injuries, noting the amount of blood loss and level of consciousness. Although defendant complained of pain, he was stable and did not appear to be in shock. According to Shear and Aldridge, defendant's wound appeared to have stopped bleeding; defendant was not medicated, was coherent and able to provide personal information, such as his name, address and any preexisting medical problems. Shear testified that when he asked defendant why he shot Simenson, defendant seemed to ponder the question before answering that he did not want to go back to jail.

The paramedics' testimonies were corroborated by Officer Stoddard of the Crest Hill police department. Officer Stoddard testified that he guarded defendant in the ambulance; however, his gun was not drawn at the time. Although defendant complained of pain, he was coherent and able to answer questions. Dr. Kasbekar, defendant's treating physician, testified that upon defendant's arrival at the hospital, defendant was in severe pain and in shock. However, defendant was alert and personally gave Dr. Kasbekar consent to operate. Dr. Kahn, who also treated defendant in the emergency room, testified by stipulation that at the time of defendant's admission, defendant was in shock, but coherent.

We do not believe that the circumstances surrounding defendant's statement rose to the level of coercion found in the cases cited above. The tenor of defendant's statement is inconsistent with that of one whose will is overborne. Also, there is no evidence that defendant believed that he was compelled to answer Shear's question as a condition to receiving medical treatment. In any event, the “constitutional inquiry into the issue of voluntariness `requires more than a mere color-matching of cases.' ” 
Beecher
, 389 U.S. at 38, 19 L. Ed. 2d at 39, 88 S. Ct. at 191, quoting 
Reck v. Pate
, 367 U.S. 433, 442, 6 L. Ed. 2d 948, 954, 81 S. Ct. 1541, 1547 (1961). Viewing the totality of the circumstances in the case 
sub judice
, we believe that the trial court properly found that defendant's statement was voluntary. Therefore, the trial court's denial of defendant's motion was proper.

Trial

Defendant argues that he was deprived of his right to confront witnesses against him when the trial court permitted the jury to hear the contents of the 911 telephone call from the victim of the robbery to the Crest Hill police dispatcher. Although defendant claims that his constitutional rights were violated, the substance of his claim is that the tape recording constituted inadmissible hearsay. The tape can be summarized as follows. In response to Chaney's phone call regarding the robbery, the 911 operator relays the information to Officer Evanoff. Officer Evanoff advises the operator that he is on his way to speak to Chaney. Officer Simenson then reports that a black male in a white car has left the apartment complex and he will stop the car at Theodore and Burry Circle. After stopping the car, Officer Simenson reports the license plate of the car, the vehicle identification number, and the name of the driver, Gregory Shaw. Officer Smith reports that he is on his way to assist Officer Simenson. Officer Evanoff reports Chaney's description of the robber and states that he is en route to Theodore and Burry Circle with Chaney. After approximately four minutes of silence, Officer Evanoff reports that an officer is down and requests an ambulance. The operator dispatches the Joliet police department for assistance. Officer Smith requests a second ambulance.

As stated earlier, defendant argues that introduction of the 911 tape constituted inadmissible hearsay. Hearsay is an out-of-court statement offered to establish the truth of the matter asserted; hearsay is generally not admissible in evidence. 
People v. Rogers
, 81 Ill. 2d 571, 577 (1980). However, testimony about an out-of-court statement which is used for a purpose other than to prove the truth of the matter asserted in the statement is not “hearsay.” 
People v. Simms
, 143 Ill. 2d 154, 173 (1991). For example, a hearsay statement is allowed where it is offered for the limited purpose of showing the course of a police investigation where such testimony is necessary to fully explain the State's case to the trier of fact (
Simms
, 143 Ill. 2d at 174) or to establish the intent or state of mind of the declarant (
People v. Newbury
, 53 Ill. 2d 228 (1972)). The admissibility of evidence is within the sound discretion of the trial court, and its ruling will not be reversed unless there has been an abuse of that discretion. 
People v. Ward
, 101 Ill. 2d 443 (1984).

Here, the trial court found that the tape was relevant to establish that Simenson was a police officer acting in the course of his official duties. The court also found that the tape assisted the jury in understanding the parties' conduct and refuted defendant's claim of self-defense. Therefore, we hold that the tape did not constitute inadmissible hearsay. Defendant claims, however, that to establish that Simenson was acting in the course of his duties, the jury would have to accept the truth of the matter asserted, 
i.e.
, statements that decedent was pulling the car over and statements identifying the decedent as a police officer. We reject defendant's reasoning. The determination of whether a statement constitutes inadmissible hearsay does not focus upon the substance of the statement, but rather the purpose for which the statement is being used.

 Furthermore, the record reflects that the trial court specifically instructed the jury that it was to consider the 911 tape for the limited purpose of understanding the manner in which the police conducted their investigation; to show the continuity of the police conduct, the effect of the conversations on the listeners' states of mind and why the listeners acted as they did; to show the declarants' states of mind and why the declarants acted as they did; and to show the actual time in which all the events took place. We must presume, absent a showing to the contrary, that the jury followed the trial judge's instructions in reaching a verdict. 
Simms
, 143 Ill. 2d at 174.

Defendant also argues that the admission of the tape was prejudicial because it was used to counter defendant's defenses and inflame the jurors' passions by allowing them to hear decedent's voice. It is true that the admissibility of evidence may also depend upon whether the probative value outweighs its prejudicial effect to the defendant. 
People v. Monroe
, 66 Ill. 2d 317, 323 (1977). However, evidence which is otherwise relevant will not be excluded merely because it may prejudice the accused or because it might arouse feelings of horror or indignation in the jury. 
People v. Foster
, 76 Ill. 2d 365, 375-76 (1979). The effect of prejudicial or inflammatory evidence depends on the circumstances of the case. 
People v. Gacy
, 103 Ill. 2d 1, 86 (1984). It is the function of the trial judge to weigh the probative value and potential prejudicial effect of such evidence. 
People v. Greer
, 79 Ill. 2d 103, 117 (1980). The exercise of that discretion will not be interfered with unless there has been an abuse which prejudices the defendant. 
People v. Williams
, 97 Ill. 2d 252, 291 (1983).

We do not believe that the nature of the tape was highly prejudicial to defendant in light of the fact that the jury was confronted with defendant's description of the shooting and the testimony of police officers who witnessed the shooting of Officer Simenson. Also, the jury heard only the procedures taken in stopping the defendant's car and not the actual shooting event. In view of this evidence, we cannot say that the admission of the tape was so prejudicially inflammatory as to deny defendant a fair trial. The probative value outweighed any inflammatory effect.

Defendant also contends that the use of the 911 tape was not necessary because other witnesses were capable of explaining the events without the tape. However, evidence may properly be admitted even if cumulative to oral testimony covering the same issue. 
People v. Jurczak
, 147 Ill. App. 3d 206, 213 (1986). Accordingly, we hold that the trial court did not abuse its discretion in allowing the jury to hear the 911 tape. 

Defendant further contends that the prosecutor engaged in improper argument during trial. The prosecution made the following remark in rebuttal during closing arguments:

“You talk about restraint. These officers exercised the utmost in restraint. Elton Williams could have had another gun and shot Tom Evanoff right there. Tom Evanoff gets him handcuffed and again, as I said, he was given appropriate medical treatment.”

Defendant failed to offer a contemporaneous objection to the remark and failed to raise this issue in his post-trial motion. Therefore, defendant has waived this issue. See 
People v. Enoch
, 122 Ill. 2d 176, 186 (1988). Further, we do not believe that the challenged prosecutorial comments rose to the level of plain error. See 134 Ill. 2d R. 615(a). The evidence at trial was not closely balanced where defendant admitted to shooting Officer Simenson and his claim of self-defense was not supported by the evidence nor does the alleged error affect substantial rights.

Defendant next contends that he is entitled to a new trial because the jury convicted him without the benefit of written jury instructions on second degree murder and self-defense. To decide this issue, a detailed recitation of the jury instruction procedure followed by the trial court is necessary.

At the conclusion of closing arguments, the trial judge read the prepared jury instructions to the jury, including the instructions on second degree murder and self-defense. The jury retired at 5:15 p.m. Shortly thereafter, the parties discovered that the written second degree murder instruction contained an extra phrase. The trial judge gave defense counsel the option of whiting out the extra phrase and sending the instructions back to jury; re-reading the correct instructions; or retyping the instruction to reflect the correct version. Initially, defense counsel elected to simply “white out” the extra phrase. However, he later decided to have the instructions retyped and sent back to the jury without re-reading the instruction to the jury. The trial judge decided to wait for the second degree murder instruction to be retyped before sending all of the instructions back to the jury.

At 5:50 p.m., the bailiff delivered all written instructions to the jury. At that same time, the jury informed the bailiff that they had reached a verdict. However, the jury did not then return to the courtroom. Instead, at 6:10 p.m., the foreman sent the judge a note advising him that the jury had inadvertently signed an incorrect verdict form. The judge then suggested that he: (1) have the jury submit all the verdicts, (2) poll the jury, and (3) question the foreman regarding the improperly signed verdict. All parties agreed with the court's suggested approach. At 6:25 p.m., the jury returned. The foreman handed the judge the voided verdict form and the correctly signed verdicts. The jury found defendant guilty of first degree (intentional) murder, and first degree (felony) murder. After they were polled, the jurors left the courtroom. The judge advised the parties that the jury had voided the “guilty of first degree (knowing) murder” verdict. Both sides agreed that the jury should be called back and reinstructed to sign one of three additional verdicts: (1) guilty of first degree (knowing) murder; (2) not guilty of first degree (knowing) murder; or (3) guilty of second degree murder. The judge instructed the jury as agreed.

At 6:59 p.m., the jury reported that it had reached its verdict on the third count. The jury found defendant guilty of first degree (knowing) murder. The trial court accepted all the verdicts and entered judgment on the intentional murder count, as well as the armed robbery count to which defendant had already pled guilty.

 On the next court date, defendant moved for a mistrial, arguing that the jury lacked the opportunity to read the second degree or self-defense instructions prior to reaching its decision. The trial court denied the motion, finding that the jury was given the instructions at 5:50 p.m., but did not return its verdicts until 6:37 p.m. The jury was further instructed on the remaining counts and reached a verdict on those counts sometime after 7 p.m. The judge concluded that the jury had time to read the instructions before filling out the verdicts and that it, in fact, had to have read them in order to fill out the verdicts.

The State argues that defendant has waived this issue because defense counsel agreed to, and, in fact, dictated, the method of jury instruction. We note that defendant did not make a contemporaneous objection at the time the jury stated it had reached a verdict without the benefit of the jury instructions. Generally, such inaction constitutes a waiver of any impropriety regardless of whether the objection was raised in a post-trial motion. 
Enoch
, 122 Ill. 2d at 186. However, because the alleged error affects defendant's substantial rights, we will consider it under the plain error doctrine.

Supreme Court Rule 451(c) provides that “[i]nstructions in criminal cases shall be tendered, settled, and given in accordance with section 2–1107 of the Code of Civil Procedure ***.” 135 Ill. 2d R. 451(c). Section 2–1107 states:

“(a) The court shall give instructions to the jury only in writing, unless the parties agree otherwise, and only as to the law of the case. ***

(b) The original written instructions given by the court to the jury shall be taken by the jury to the jury room, and shall be returned by the jury with its verdict into court.” 735 ILCS 5/2–1107 (West 1992).

The function of the instructions is to convey to the jurors the correct principles of law applicable to the facts so that they can arrive at a correct conclusion according to the law and the evidence. 
People v. Cadwallader
, 181 Ill. App. 3d 488, 503 (1989). It is the trial court's burden to insure the jury is given the essential instructions as to the elements of the crime charged, the presumption of innocence, and the question of burden of proof. 
Cadwallader
, 181 Ill. App. 3d at 501. Fundamental fairness requires the trial court to give correct instructions on the elements of the offense in order to insure a fair determination of the case by the jury. Failure to so instruct the jury constitutes plain error. 
People v. Ogunsola
, 87 Ill. 2d 216 (1981).

Defendant argues that because the jury did not initially have the benefit of written instructions, he was precluded from effectively presenting a lesser offense and his self-defense claim to the jury. He relies on 
Cadwallader
 to support his argument. In 
Cadwallader
, the jury deliberated without the written instructions for a period of time after having been inaccurately instructed orally. The oral instructions omitted an essential element of the offense of theft. After receiving the oral instructions, the jury was permitted to deliberate without written instructions for 35 minutes out of a total deliberation time of 72 minutes.

The jury, was, the court stated, erroneously left to its own speculation and improvisation concerning the elements of the crime charged. Further, there were only two witnesses who provided evidence of the defendant's guilt; both of these witnesses had admittedly taken part in the crimes with which the defendant was charged. The court concluded that in order to weigh fairly the testimony of these two witnesses against the testimony of the defendant's alibi witnesses, the jury should have had before it the written accomplice instruction. “On these facts” the court said, “we consider it plain error for the jury to have also been deprived, for any amount of time, *** of the crimes charged, the presumption of innocence, and the burden of proof.” 
Cadwallader
, 181 Ill. App. 3d at 503.

The court further noted that there was some indication in the record on appeal that the jury had concluded that the defendant was guilty before it had examined the written jury instructions. The court stated:

“Without placing undue emphasis on that fact, we find the other factors, 
i.e.
, improper oral instruction, partial deliberation without written instructions, and the presentation of a substantial defense, combine to constitute plain error in the instruction of the jury in this case. Fundamental fairness and the `interests of justice' require that defendant be awarded a new trial.” 
Cadwallader
, 181 Ill. App. 3d at 503.

We believe that 
Cadwallader
 is distinguishable from the instant case in several important aspects. First, in this case, the oral instructions given were proper. In fact, the jury was reinstructed on knowing murder and second degree murder. Second, defendant did not present a substantial defense–the evidence against this defendant was overwhelming. Third, although the jury stated that it had reached a verdict prior to receiving the instructions, the jury had the opportunity to deliberate for over one hour after receiving the instructions. Therefore, we do not believe that any instructional error was so substantial that it reflected on the fairness of the trial.

Sentencing

Eligibility Phase

Defendant contends that the jury improperly found him eligible for a death sentence based on the felony murder aggravating factor because the elements instruction and the verdict form did not include the required culpable mental state. As the State correctly observes, this issue is waived because defense counsel did not object to the instruction or verdict form and failed to raise this issue in a post-trial motion. However, defendant argues that defense counsel's failure to object constituted ineffective assistance of counsel. This court has held that the doctrine of waiver should not bar consideration of an issue where the alleged waiver stems from incompetency of counsel. See 
People v. Guest
, 166 Ill. 2d 381 (1995); 
People v. Salazar
, 162 Ill. 2d 513 (1994). To prove ineffective assistance of counsel, defendant must show (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that counsel's deficient performance resulted in prejudice to defendant. If defendant fails to make a sufficient showing of either prong, this court need not consider the remaining prong. 
Strickland v. Washington
, 466 U.S. 668, 697, 80 L. Ed. 2d 674, 699, 104 S. Ct. 2052, 2069 (1984).

 Initially, we note that it appears this court has not previously addressed the issue of whether a defendant is properly found to be eligible for the death penalty, where the jury instructions as well as the verdict form fail to set forth the requisite mental state for an aggravating factor. But see 
People v. Mack
, 167 Ill. 2d 525 (1995) (holding that where the verdict form attempts to set forth a statutory aggravating factor, the verdict form must include the essential elements of the offense). We need not resolve that issue here because even if the felony murder aggravating factor is invalid, defendant's eligibility for the death penalty is not altered.

The jury found defendant eligible for the death penalty based on 
two
 separate statutory aggravating factors: (1) felony murder and (2) murdering a police officer. See 725 ILCS 5/9–1(b)(1), (b)(6) (West 1992). This court has repeatedly recognized that the Illinois death penalty statute does not place special emphasis on any one aggravating factor and does not accord any special significance to multiple aggravating factors as opposed to a single aggravating factor. 
People v. Page
, 156 Ill. 2d 258, 268-69 (1993); 
People v. Brown
, 169 Ill. 2d 132, 164 (1996); 
People v. Cole
, 172 Ill. 2d 85, 102-03 (1996). There is no claim that the second aggravating factor is in any way defective. Thus, defendant remains eligible for the death penalty, even if the felony murder aggravating factor was invalid.

We also disagree with defendant that the invalid aggravating factor requires a new second stage sentencing hearing. Resentencing is necessary where the sentencing body, at the second phase of the sentencing hearing, might have considered an aggravating factor which was not supported by the evidence. See 
People v. Brownell
, 79 Ill. 2d 508 (1980). We find that the jury in the present case could not have considered matters not supported by the evidence. Assuming 
arguendo
 the felony murder aggravating factor is invalid, the jury was, nevertheless, entitled to consider defendant's same conduct in making its sentencing determination. See 
Page
, 156 Ill. 2d 258. The elimination of one of the statutory aggravating circumstances does not reduce that evidence. An error in the instruction or verdict form did not diminish the weight of the evidence to support the felony murder conviction. See 
Cole
, 172 Ill. 2d at 103. In view of the circumstances in this case, we hold that defendant was not prejudiced by defense counsel's failure to object to the flawed instruction and verdict forms.

Aggravation and Mitigation

Before further addressing the defendant's arguments regarding the second stage of his sentencing hearing, we note that section 9–1(e) of our death penalty statute allows the introduction of evidence during the sentencing hearing that would not ordinarily be admissible during the guilt phase of the trial. 720 ILCS 5/9–1(e) (West 1992). This court has held that a sentencing judge has wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within the limits fixed by the law. 
People v. Eddmonds
, 101 Ill. 2d 44, 65 (1984); 
People v. Adkins
, 41 Ill. 2d 297, 300 (1968). The only requirement for admission is that the evidence be reliable and relevant, as determined by the court within its sound discretion. 
People v. Foster
, 119 Ill. 2d 69, 96, (1987).

Defendant argues that he is entitled to a new second stage sentencing hearing because decedent's wife recommended that the death penalty be imposed and commented upon defendant's courtroom demeanor. Defendant concedes that he has waived these issues because no contemporaneous objections were made and they were not included in a post-trial motion. Defendant nevertheless urges that defense counsel's failure to object either amounted to plain error or constituted ineffective assistance of counsel. The failure to object to the consideration of allegedly improper evidence during a sentencing hearing and to raise the issue in a post-sentencing motion results in a waiver of the issue on appeal unless the error is deemed plain error. 
People v. Mahaffey
, 166 Ill. 2d 1, 27 (1995).

The record reflects that, in aggravation, the State presented defendant's criminal record, which included charges of theft and robbery. The State also presented evidence of defendant's gang activity and testimony of David Ward, who was an inmate with defendant at Pontiac Correctional Center while defendant awaited trial on the instant offense. Ward testified that defendant informed him that he and Shaw planned to commit a robbery and if stopped by the police, defendant would shoot them. Ward also testified that defendant showed no remorse for the shooting and, in fact, wrote a song about the shooting. The State also presented the testimony of Officer Love, who testified that an informant provided information about defendant's role in a burglary. The informant also stated that defendant had decided that if police tried to arrest him, he would “shoot it out with them.”

In mitigation, defendant presented evidence that he was raised in a poor family and his father hated him and physically, emotionally, and sexually abused defendant and his siblings. A mitigation expert and a psychologist testified on defendant's behalf and opined that defendant's conduct may have been caused by the abuse he suffered as a child. The evidence also revealed that defendant had worked several jobs, including one that involved working with severely handicapped persons.

In viewing the record, we do not believe that the evidence in aggravation and mitigation was so closely balanced as to warrant granting defendant a new second stage sentencing hearing. However, we must determine whether the alleged error was so substantial that it denied the defendant a fair proceeding. 
Mahaffey
, 166 Ill. 2d at 27.

In 
People v. Howard
, 147 Ill. 2d 103 (1991), we adopted the United State's Supreme Court's holding in 
Payne v. Tennessee
, 501 U.S. 808, 115 L. Ed. 2d 720, 111 S. Ct. 2597 (1991), which declared that “a State may properly conclude that for the jury to assess meaningfully the defendant's moral culpability and blameworthiness, it should have before it at the sentencing phase evidence of the specific harm caused by the defendant.” 
Payne
, 501 U.S. at 825, 115 L. Ed. 2d at 735, 111 S. Ct. at 2608. We agreed with the court that such evidence is relevant to a consideration of the appropriate punishment for a capital defendant. 
Howard
, 147 Ill. 2d at 158. However, we also held that the opinions of witnesses regarding what sentence should be imposed are not evidence and therefore are irrelevant and inadmissible. 
Howard
, 147 Ill. 2d at 162; see 
People v. Williams
, 161 Ill. 2d 1, 70 (1994).

Specifically, defendant refers to comments made by decedent's wife, Mrs. Simenson, regarding the impact her husband's death had upon her and her children:

“My family and I are very confident that all of you will return a quick verdict which will send a message to my children, society, and the law enforcement community that we simply will not tolerate or accept our last means of protection being annihilated on our streets. Renew our faith in the criminal justice system and bring a phase of closure to this ongoing nightmare that fills our lives.

* * *

It hurts and upsets my family terribly to know I can never talk to Tim again and my children will never see their dad again. Elton Williams' attitude is a slap in the face to not only my family but to those–but to those of police officers as well.”

Defendant argues that Mrs. Simenson's references to a “quick verdict” and “closure” communicated a desire for the death penalty. He relies on 
People v. Threadgill
, 166 Ill. App. 3d 643 (1988), to support his argument.

In 
Threadgill
, the prosecution made repeated comments to the jurors that their decision would indicate whether they supported their police officers who were out protecting them and that their decision would affect what the police felt as far as support from the jurors. The court held that these comments were highly inflammatory and prejudiced defendant because they bore no relationship to the evidence and, instead, diverted the jurors away from the evidence by turning the trial into a test of the jurors' support for their local police officers. 
Threadgill
, 166 Ill. App. 3d at 651.

We do not regard Mrs. Simenson's comments as recommending the death penalty to the jury. We do not believe that she recommended that the jury bring “closure” to defendant's life. Rather, we believe that “closure” and a “quick verdict” referred to her desire that the jury deliberate in an expedient manner so that she and her family could move on with their lives. We further do not believe that Mrs. Simenson's remarks rose to the level of impropriety found in 
Threadgill
. Her request to “send a message to [her] children, society, and law enforcement community” was directed at the community at large and not improperly focused upon support of police officers. We especially do not believe her remarks were intended to inflame the jurors' fears that a sentence less than death was tantamount to not supporting law enforcement in the community. Moreover, the trial court instructed the jury that its decision was not to be swayed by sympathy, passion, or prejudice. Therefore, we find plain error did not occur; therefore, the issue is waived.

Defendant also argues that Mrs. Simenson improperly commented on defendant's behavior in the courtroom. Specifically, Mrs. Simenson stated:

“Elton Williams has shown no remorse for taking my husband's life. It has been very hurtful throughout all the court proceedings of the last fifteen months to see Elton Williams converse with his wife and child with smiles and waves. Elton Williams was even bold enough to ask a guard to move because he was blocking his view to his wife.”

Although this remark is irrelevant to the effect that decedent's death has had upon Mrs. Simenson and her family, we do not believe that defendant was prejudiced by the remarks. Because the evidence in aggravation and mitigation was not closely balanced and the errors, if any, are not so substantial that defendant was denied a fair sentencing hearing, we do not find that plain error applies to this issue. Additionally, because defendant was not prejudiced, we conclude that defense counsel was not ineffective. See 
Strickland v. Washington
, 466 U.S. at 697, 80 L. Ed. 2d at 697, 104 S. Ct. at 2067.

Defendant also contends that the State improperly argued during sentencing:.

“In closing, why are we here? How did we get here? We got here by an example of how the system works. Tom Evanoff and Ralph Smith had another twelve bullets in their semi-automatic, .40 caliber Glocks. When they saw Tim Simenson get shot in the face and fall before their very eyes, they could have pulled those weapons. And you heard the testimony. They can fire two or three shots a second. They could have opened fire on Elton Williams and cut him in half. They could have emptied their revolvers in three to four seconds and cut him in half, and we wouldn't be here.”

Defendant contends this comment diminished the jury's sense of responsibility in violation of 
Caldwell v. Mississippi
, 472 U.S. 320, 86 L. Ed. 2d 231, 105 S. Ct. 2633 (1985). However, this issue is also waived because defendant failed to object and did not raise this issue in his post-trial motion. 
Enoch
, 122 Ill. 2d at 186. We also do not believe that the plain error doctrine applies to this issue. See 134 Ill. 2d R. 615(a). The evidence at the second stage of defendant's sentencing hearing was also not closely balanced where the State's evidence in aggravation heavily outweighed defendant's mitigation evidence.

Furthermore, we do not believe that the alleged error was so substantial that it deprived defendant of a fair sentencing hearing. The prosecutor's closing argument at sentencing emphasized the testimony of the witnesses and reviewed the aggravating factors and mitigating evidence. The prosecutor also asked the jury to sign the verdict form that indicated there were insufficient mitigating factors to preclude the imposition of the death penalty. Further, during closing arguments, the trial judge carefully instructed the jury regarding its responsibilities. Moreover, the verdict forms properly stated that it was the jury that must decide the question of whether the death sentence should be imposed.

Defendant also contends that the trial court erred in allowing the State to introduce his voluntary statement into evidence at the second stage sentencing hearing. Defendant argues that because the police did not advise him of his 
Miranda
 rights, admittance of the statement violated his fundamental right against self-incrimination. We disagree.

Any statement which is volunteered is not necessarily barred by the fifth amendment and can be admitted at trial. 
Miranda v. Arizona
, 384 U.S. 436, 478, 16 L. Ed. 2d 694, 726, 86 S. Ct. 1602, 1630 (1966). In 
Harris v. New York
, 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643 (1971), the Supreme Court held that even statements which were obtained in violation of 
Miranda
 could be used for impeachment purposes if the defendant took the stand and testified in a manner contrary to his earlier statements. The court held that this procedure would not undermine the deterrent effect of the exclusionary rule and determined that sufficient deterrence flows when the evidence in question is made unavailable to the prosecution in its case in chief. 
Harris
, 401 U.S. at 225, 28 L. Ed. 2d at 4, 91 S. Ct. at 645.

In the instant case, defendant testified at trial that he shot Officer Simenson in self-defense. However, paramedic Shear testified during the second stage of the sentencing hearing that defendant stated that he shot Officer Simenson because he did not want to go back to jail. Therefore, the State properly used defendant's voluntary statement to impeach defendant's testimony.

We believe that defendant's reliance on 
Estelle
 v. Smith
, 451 U.S. 454, 68 L. Ed. 2d 359, 101 S. Ct. 1866 (1981), and 
People v. Szabo
, 94 Ill. 2d 327 (1983), is misplaced. In 
Estelle
, the Supreme Court held that testimony given at the death penalty hearing regarding defendant's pretrial fitness examination violated the defendant's rights under the fifth amendment. The defendant was given no indication that the compulsory examination would be used to gather evidence necessary to sentence him to death. The Court stated that the fifth amendment required that the defendant be informed of his right to remain silent and be advised of the possible use of his statements. Because the defendant was afforded no such warnings, the Court concluded that his death sentence could not stand. 
Estelle
, 451 U.S. at 469, 68 L. Ed. 2d at 373, 101 S. Ct. at 1876.

In 
Szabo
, this court vacated defendant's death sentence because the State cross-examined the defendant regarding his post-arrest silence. This court held that a prosecutor's remarks on the defendant's silence following his arrest cannot be used to impeach exculpatory testimony of a defendant at trial or sentencing. 
Szabo
, 94 Ill. 2d at 360.

In the instant case, defendant's statement was neither court ordered nor obtained for the specific purpose of determining his eligibility for death. Furthermore, unlike the defendant in 
Szabo
, the defendant in the present case chose not to remain silent. Thus, the State did not comment upon a “post-arrest silence,” but upon a prior inconsistent voluntary statement.

Defendant also claims that the State improperly used his voluntary statement to impeach the defendants' expert witness on cross-examination. In general, any permissible kind of impeaching matters may be developed on cross-examination since one of the purposes of cross-examination is to test the credibility of witnesses. Counsel may also probe the witness' qualifications, experience and sincerity, weaknesses in his basis, the sufficiency of his assumptions, and the soundness of his opinion. Counsel is also permitted to test the knowledge and fairness of the expert by inquiring into what changes of conditions would affect his opinion, and in conducting such an inquiry, the cross-examiner is not limited to facts finding support in the record. Likewise, an expert may be cross-examined for the purpose of explaining, modifying, or discrediting his testimony, as well as to ascertain what factors were taken into account and what ones were disregarded in arriving at this conclusions. 
People v. Page
, 156 Ill. 2d 258, 275 (1993), quoting 
People v. Pasch
, 152 Ill. 2d 133, 179 (1992).

At the sentencing hearing in the instant case, defendant's expert witness, Dr. Brown, testified that as a result of sexual, physical, and emotional abuse at the hands of his father, defendant was unusually fearful and mistrustful and prone to overreact in stressful situations. Dr. Brown concluded that defendant's experiences made defendant extremely sensitive about being victimized, and prompted the belief that he needed to shoot the decedent to protect himself. On cross-examination, Dr. Brown testified that he could not recall whether defendant informed him that he shot Officer Simenson because he did not want to go to prison. Dr. Brown stated that the statement would be extremely significant to the validity of his conclusion that defendant had acted out of fear because it revealed another motive for the crime. We believe that the prosecution's cross-examination of Dr. Brown, which questioned the soundness of his opinion and tested the knowledge and fairness of his opinion, was within the proper scope of cross-examination.

Defendant also argues that the State improperly used defendant's voluntary statement during rebuttal to denigrate the mitigation evidence. Generally, prosecutors are permitted wide latitude in their closing arguments, although their comments must be based on the facts in evidence or upon reasonable inferences drawn therefrom. 
Page
, 156 Ill. 2d at 276.

During rebuttal, the State commented:

“Now I asked him [Dr. Brown] specifically, if Elton Williams lied to you about how everything went down in the trunk of that car and how the officer was killed, would all your theories go out the window? He said yes. Well, what do we know? Elton Williams did lie to him about what happened in the trunk of the car, so therefore Dr. Brown's opinions as to whether this abuse that he suffered until the age of nine had any effect would go out the window.”

We believe that the prosecutor's comment was proper commentary on defendant's self-defense theory. Furthermore, the trial court instructed the jurors that closing arguments are not to be considered as evidence. Therefore, where defendant has not shown that the remarks of the prosecutor were so prejudicial and improper that they could not be cured by an admonition to the jury, no grounds exist upon which to vacate his sentence. See 
People v. Fields
, 135 Ill. 2d 18, 64 (1990).

Lastly, defendant argues that he was denied a fair sentencing hearing because the trial court allowed into evidence unreliable testimony of a police officer that the State called in aggravation during the second phase of the sentencing hearing. Defendant maintains that the witness' testimony was unreliable and deprived him of his eighth and fourteenth amendment right to a fair and accurate capital sentencing hearing.

Specifically, defendant's contention concerns the testimony of Officer Love. Officer Love testified that an informant, Tony Saxon, told him that an individual by the name of “Scoots” had possession of a .25-caliber weapon which was stolen during a burglary. Officer Love also testified that “Scoots” told Saxon that he (“Scoots”) would “shoot it out” with any police officer that tried to arrest him. Officer Love later determined that “Scoots” was defendant. He attempted to locate defendant to question him about the burglary, but he was unable to contact him. Although defendant was a suspect in the burglary, Officer Love testified that he was unable to “make a case.” The gun was never recovered.

Defendant argues that the officer's testimony constituted unreliable, uncorroborated double hearsay. It is well settled that hearsay testimony is not 
per se
 inadmissible at a sentencing hearing as unreliable or as denying a defendant's right to confront accusers. The objection goes to the weight of the evidence and not its admissibility. 
People v. Foster
, 119 Ill. 2d at 98. Also, this court observed in 
People v. Jones
, 94 Ill. 2d 275, 286-87 (1982), that “a defendant in a capital case has no due process right to cross-examine all out-of-court sources of information relied upon in sentencing.” This court has recognized, however, that where this court has approved the admission of double hearsay, at least some parts of the double hearsay have been corroborated by other evidence. 
People v. Erickson
, 117 Ill. 2d 271, 300 (1987). Hearsay evidence of crimes that did not result in prosection or conviction is therefore admissible at the aggravation and mitigation phase if it meets the requirements of relevancy and reliability. 
People v. Young
, 128 Ill. 2d 1, 54 (1989).

 Defendant argues that the officer's testimony was too unreliable to be admitted because Saxon was a suspect in the crime in which he implicated defendant. It is true that the United States Supreme Court has labeled “presumptively unreliable” accomplices' confessions that incriminate a defendant. 
Lee v. Illinois
, 476 U.S. 530, 541, 90 L. Ed. 2d 514, 526, 106 S. Ct. 2056, 2062 (1986). Although the Court made this statement in reference to testimony used for determining guilt rather than for sentencing, the Court's statement was “premised on the basic understanding that when one person accuses another of a crime under circumstances in which the declarant stands to gain by inculpating another, the accusation is presumptively suspect.” 
Lee
, 476 U.S. at 541, 90 L. Ed. 2d at 526, 106 S. Ct. at 2062.

Notwithstanding the indicia that Saxon's statement was not reliable, we believe there are sufficient indicia of reliability to overcome the presumption of unreliability and justify its admission. In particular, we note that the officer compiled the information during an official investigation. See 
Foster
, 119 Ill. 2d at 99. Saxon identified defendant as “Scoots.” The officer corroborated that “Scoots” was in fact defendant, located defendant's residence and talked to defendant's mother, who verified defendant's alias as “Scoots.” Also, defendant conceded that “Scoots” is his name. Assuming 
arguendo
 the trial court erred in admitting the testimony, we believe that the error is harmless because the evidence in aggravation was so overwhelming that the error would not have impacted the jury's decision.

Constitutionality of Statute

In his final two arguments, defendant challenges the Illinois death penalty statute (720 ILCS 5/9–1 (West 1992)), arguing that it places a burden of proof on the defendant which precludes meaningful consideration of mitigation and allows the sentencer to weigh a vague aggravating factor: “any other reason” a defendant should be sentenced to death.

This court has previously rejected defendant's argument that the sentencing provision unconstitutionally places on the defendant the burden of persuasion on the question whether sufficient mitigating circumstances exist to preclude imposition of the death penalty. 
People v. Whitehead
, 116 Ill. 2d 425, 465 (1987); 
People v. Caballero
, 102 Ill. 2d 23, 49 (1984). We decline to consider this argument anew. We also reject defendant's argument that the language set forth in the statute contains a vague aggravating factor for the sentencer to consider. Rather, we find that the statute sets forth specific aggravating factors for consideration of imposing the death penalty. See 720 ILCS 5/9–1(b) (West 1992). Although aggravating factors need not be limited to those factors set forth in subsection (b) (see 720 ILCS 5/9–1(c) (West 1992)), the sentencer is limited to consideration of matters introduced in evidence before it. 
People v. Phillips
, 127 Ill. 2d 499, 537 (1989). Therefore, we conclude that the death penalty statute is not unconstitutional in this regard.

Defendant also contends that while various aspects of the statute have been found constitutional individually, the cumulative effect of all the aspects is to render the statute unconstitutionally arbitrary and capricious. This argument has been considered and rejected by this court on several occasions and defendant presents nothing new here to persuade us to reconsider. 
People v. Edgeston
, 157 Ill. 2d 201, 247 (1993).

CONCLUSION

For the reasons stated, the judgment of the circuit court of Will County is affirmed. We direct the clerk of this court to enter an order setting Tuesday, May 19, 1998, as the date on which the sentence of death, entered by the circuit court of Will County, shall be carried out. The defendant shall be executed in the manner provided by law. 725 ILCS 5/119–5 (West 1994). The clerk of this court shall send a certified copy of the mandate to the Director of Corrections, the warden of Stateville Correctional Center and to the warden of the institution where the defendant is now confined.

Affirmed
.