2020 IL App (2d) 180034-U
No. 2-18-0034
Order filed March 20, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CM-3309 |
| SAMANTHA OKAPAL, | ) ) | Honorable Linda S. Abrahamson |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ZENOFF delivered the judgment of the court.
Justices Jorgensen and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court did not abuse its discretion in admitting video evidence taken at the time of the arrest: coupled with other evidence, the police car's dashcam video was not unduly prejudicial and provided a continuing narrative of the events giving rise to the offense of resisting a peace officer.

¶ 2    Following a bench trial, defendant, Samantha Okapal, was convicted of resisting a peace officer (720 ILCS 5/31-1(a) (West 2016)).  She appeals, contending that she was unreasonably prejudiced by the trial court's consideration of a dashcam video on which she can be heard cursing at and threatening the arresting officers.  We affirm.

¶ 3                                    I. BACKGROUND

¶ 4 Defendant moved *in limine* to exclude from evidence portions of a police dashcam video. She contended that the video of events after she was handcuffed was irrelevant or more prejudicial than probative. The trial court denied the motion, finding that the video was probative of "motive, absence of mistake," and "her mental state."

¶ 5 At trial, Aurora police officer Dominic Tamberelli testified that he and officer Bradley Vonhoff were dispatched to a reported domestic disturbance. They arrived separately and encountered defendant, her mother, Leann Okapal, and her sister, Andrea Okapal. Defendant was arguing with her mother and using profanity. The officers learned that the argument began when Leann took defendant's video-game remote controller and defendant responded by taking Leann's cigarettes. Tamberelli decided that the parties were resolving the situation on their own, so the officers left the house.

¶ 6 As the officers walked back to their respective squad cars, defendant threw something out the front door and ran onto the porch screaming profanities at Andrea. While defendant and Andrea argued on the porch, Leann locked the front door. Defendant ran to the front door and, finding it locked, responded with a string of profanity. She ran to the rear door and found that it, too, was locked. She returned to the front porch and banged on and kicked the front door, "swearing throughout the process." She said that if Leann did not open the door, she would break it down and "[b]ust her teeth out."

¶ 7 Defendant started to walk down the porch steps. Tamberelli, who was standing at the bottom of the steps, said, " 'You're coming with us now.' " Defendant swore and walked past Tamberelli toward Vonhoff. Tamberelli told defendant that she was under arrest for disorderly conduct. Vonhoff reached for her left arm, but she spun away from him. Tamberelli then grabbed her left arm as Vonhoff grabbed her right. Defendant pulled her arms in and dropped her body

weight. The officers pushed her to the ground and told her to put her hands behind her back. Defendant refused, keeping her arms curled under her chest until the officers forced them into position to handcuff her. Defendant was uttering profanities the entire time.

¶ 8    Vonhoff testified similarly. He added that the officers attempted to let her up, but she tried to kick Vonhoff, so they pushed her down on her stomach while Vonhoff held her legs. He held her wrist so she would stop rolling around and trying to squirm out of the handcuffs. As he did so, she pinched his arms 50 to 60 times.

¶ 9    Eventually a police transport van arrived. As defendant was already "agitated" with Tamberelli and Vonhoff, they allowed the transport officers to take control of her.

¶ 10    The State then played the dashcam video. Defendant was visible on the video for only a short time while being escorted to the van. However, she could be heard complaining about pain in her wrists from the handcuffs, yelling obscenities at the officers, and spitting or clearing her throat. She also threatened to kill the officers, to spit on one of them, to sue them, and to set fire to the house.

¶ 11    Leann and Andrea testified for the defense that they did not hear the officers tell defendant that she was under arrest. They did not see defendant try to kick the officers. The court found defendant guilty, finding the officers credible. Conversely, the court found the defense witnesses, defendant's relatives, biased in defendant's favor. The court denied defendant's posttrial motion and sentenced her to 6 days in jail and 14 months of conditional discharge. Defendant timely appeals.

¶ 12                                    I. ANALYSIS

¶ 13    Defendant contends that she is entitled to a new trial because the trial court erred by considering the video. On appeal, she concedes that the video was relevant, but contends that its

probative value was minimal and outweighed by the prejudice it caused defendant. She reasons that the officers' testimony was sufficient to prove that she resisted and, therefore, the video was cumulative evidence that should have been excluded. Moreover, nothing of substance can be seen on the video, but she can be heard cursing, spitting, and threatening the officers. She contends that this was not part of the charged conduct and served only to place her in a bad light.

¶ 14 The admission of evidence is within the trial court's discretion and, thus, we review such rulings only for an abuse of discretion. *People v. Williams*, 181 Ill. 2d 297, 313 (1998). The admissibility of evidence may depend upon whether its probative value outweighs its prejudicial effect on the defense. *Id.* at 314. However, otherwise relevant evidence will not be excluded merely because it may prejudice the accused. *Id.* Further, evidence may be admitted even if it is cumulative to oral testimony covering the same issue. *Id.* at 315.

¶ 15 We conclude that the trial court did not abuse its discretion in determining that the video was not unduly prejudicial. Defendant cites no case in which a video of a defendant's arrest or its immediate aftermath was deemed unduly prejudicial.

¶ 16 Defendant contends that she was prejudiced by evidence of her profanity, spitting, and threats directed toward the officers. Generally, the presence of irrelevant, incompetent, immaterial, or obscene matter in a recording will not bar it from evidence so long as the objectionable portions are not prejudicial. *People v. Nahas*, 9 Ill. App. 3d 570, 578 (1973).

¶ 17 In *People v. Brown*, 83 Ill. App. 3d 741, 745 (1980), the court held that the defendant was not prejudiced by testimony about his belligerent behavior and abusive language at the police station. In *People v. Wright*, 20 Ill. App. 3d 1039, 1042 (1974), the court held that admitting evidence of the defendant's abusive statements and actions at the jail and hospital shortly after he was arrested was not improper, because it was part of the continuous narrative of events that

included the defendant's arrest. Here, too, evidence of defendant's profanity, to which the officers had already testified, was not unduly prejudicial.

¶ 18 The cases defendant cites are distinguishable. In *People v. Hardimon*, 2017 IL App (3d) 120772, the court held that portions of a recording of the defendant's interview with police were inadmissible. The parties agreed that the first third of the video, in which officers questioned the defendant about his whereabouts at the time of a shooting, was admissible. *Id.*, ¶ 34. However, subsequent portions in which the officers repeated their theory of the case and expressed confidence in the strength of the State's case were improperly admitted. *Id.*, ¶¶ 34-37.

¶ 19 In *People v. Smith*, 2017 IL App (1st) 143728, the court held that a recording of an emotionally charged 911 call was unduly prejudicial where other testimony established the same facts. In both cases, the recordings were objectionable because of third parties' statements. In neither case did the defendant's own words and actions unduly prejudice him.

¶ 20 Defendant further contends that the video contained evidence of other crimes or bad acts by defendant. Evidence of a defendant's other crimes or bad acts is generally inadmissible if relevant merely to establish the defendant's propensity to commit crimes. *People v. Manning*, 182 Ill. 2d 193, 213 (1988). However, when facts showing uncharged criminal conduct are part of a continuing narrative of the entire transaction, those facts do not concern separate, distinct, and unconnected crimes. *People v. Dismuke*, 2017 IL App (2d) 141203, ¶ 65. Here, the recording contains defendant's words during and immediately after her arrest. Thus, it was part of a continuing narrative and did not disclose separate, unrelated conduct by the defendant. By contrast, *People v. Clay*, 349 Ill. App. 3d 24 (2004), which defendant cites, concerned evidence of a separate robbery the defendant allegedly committed five months earlier.

¶ 21    In any event, any potential error in the trial court's consideration of the video was harmless beyond a reasonable doubt. See *People v. Mullins*, 242 Ill. 2d 1, 23 (2011). This was a bench trial and, as defendant acknowledges, the trial court is presumed to consider only competent evidence. *People v. Barbour*, 106 Ill. App. 3d 993, 1001 (1982). Defendant concedes that the testimony of Tamberelli and Vonhoff was sufficient, standing alone, to prove her guilt beyond a reasonable doubt. The trial court found the officers credible and the defense witnesses not credible. The court's credibility determination alone supports our conclusion that any error was harmless.

¶ 22    Defendant insists that she was prejudiced by the trial court's consideration of the video because the court referred to it several times in its findings. We disagree. The only contested issue at trial was whether defendant was aware that the officers were trying to arrest her. The video contains no evidence pertinent to this issue. The court mentioned the video only in discussing collateral issues. Overall, the court's remarks show that it based its finding of guilt primarily on the officers' credible testimony, and it was not unduly influenced by the video. Accordingly, the court's consideration of the video was not reversible error.

¶ 23                                  III. CONCLUSION

¶ 24    The judgment of the circuit court of Kane County is affirmed.

¶ 25    Affirmed.