(No. 66390.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. LARRY STRICKLAND, Appellee.

*Opinion filed September 20, 1989.*

CALVO, J., took no part.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chi-

cago, and Inge Fryklund and Marie Quinlivan Czech, Assistant State's Attorneys, of counsel), for the People.

Michael J. Pelletier, Deputy Defender, and Alan D. Goldberg, Assistant Defender, of the Office of the State Appellate Defender, of Chicago, for appellee.

JUSTICE MILLER delivered the opinion of the court:

The defendant, Larry Strickland, was indicted in the circuit court of Cook County on charges of murder, attempted murder, aggravated kidnapping, and armed robbery, among other offenses. Before trial the defendant moved to suppress statements he made to police at the time of his arrest in connection with those charges. Following an evidentiary hearing, the circuit judge granted the motion and suppressed the defendant's statements. The appellate court affirmed the circuit judge's decision in an unpublished order (163 Ill. App. 3d 1158), and we allowed the State's petition for leave to appeal (107 Ill. 2d R. 315(a)).

The charges against the defendant were based on a series of offenses that he and a codefendant, his brother, Tyrone, allegedly committed on November 5, 1985. According to the allegations and to the evidence presented at the suppression hearing, the defendant and his brother shot and killed Wheeling police officer Kenneth Dawson around 7:30 that evening while the officer was investigating a report of a break-in at an apartment complex in Wheeling. As the Stricklands were driving away from the area, they exchanged gunfire with Officer William Stutzman, who had been summoned as a backup for Officer Dawson; it appears that the defendant sustained a gunshot wound to his left index finger at that time. The Stricklands subsequently commandeered a car and forced the three occupants to take them to Chicago.

There, the driver curbed his vehicle near a squad car in an attempt to attract the attention of a police officer. The Stricklands then fled on foot, firing at the police officer, Edward Gross.

The defendant and his brother were apprehended minutes later. The defendant was found hiding under a car in a parking lot in the 600 block of South Plymouth Court in Chicago; he had a .38-caliber handgun with him. The defendant was arrested and taken to the first district police station. There, the defendant was questioned by Chicago police detectives James O'Connell and Charles Lind. While the defendant was being held at the first district station, fire department paramedics were called there to treat codefendant Tyrone Strickland for hyperventilation. The paramedics were not told about the defendant's condition, however, and they left the station without having seen the defendant.

Around 11 o'clock that night the defendant was taken to Area One headquarters, where he was questioned shortly after his arrival by Detective Robert Dwyer, one of the arresting officers. Beginning at 12:45 or 12:50 a.m., the defendant was questioned by Detective Lind and Wheeling police officer William Hubner. The interrogation lasted about 45 minutes, ending around 1:30 a.m. The defendant participated in a series of lineups beginning at 4 a.m. At 5:25 that morning, the defendant was questioned by Assistant State's Attorney Mark Rakoczy; Officers Lind and Hubner were also present. According to Rakoczy, toward the end of the interrogation the defendant mentioned the injury to his finger, and Rakoczy then decided that the defendant needed treatment. Rakoczy estimated that the interview lasted about 20 or 25 minutes, and he said that it ended several minutes after he learned of the defendant's injury.

The defendant was transported to Cook County Hospital, arriving around 6:30. The defendant's hand was X-

rayed, and at 8:20 he was placed on a stretcher in the emergency room. According to the hospital records, the defendant had come for treatment of a gunshot wound to his left index finger, and there was dried blood in the area of the wound. The records also disclosed that the defendant was alert and oriented at the time. The defendant was given a saline solution intravenously to prevent shock. The defendant was later examined by a physician, who found that the gunshot had fractured the middle phalanx of the defendant's left index finger, destroying the bone and the joint. According to the doctor, movement of the finger would have been painful. The doctor also found that the defendant had a graze wound to his hand, which was apparently caused by a bullet. The examination did not reveal evidence of any of the injuries that the defendant, at the suppression hearing, claimed to have incurred following his arrest.

Assistant State's Attorney Rakoczy arrived at the hospital around 9 o'clock that morning. After gaining permission from the doctor to speak to the defendant, Rakoczy initiated another interrogation. The defendant was lying on a gurney in a hallway near the emergency room, and Rakoczy had the defendant moved to a more secluded area nearby. The interrogation began around 9:20 or 9:25. According to Rakoczy, he asked the defendant essentially the same questions that he had asked earlier, using notes from the prior interview. Several police officers were nearby. It appears that the defendant made only oral statements during the five periods of interrogation.

The defendant underwent reconstructive surgery of his injured finger about a week after he was admitted to the hospital; the reason for the delay was to ensure that the wound was clean. A bone graft was installed in the joint, and two pins were used to hold the bone in place. The defendant was given a general anesthetic for the op-

eration. He was discharged from the hospital on November 18.

The defendant, in his testimony at the suppression hearing, maintained that he had been physically abused by the police officers at the time of his arrest and while he was at the first district police station. The defendant also testified that the officers were aware of his injury but withheld medical treatment from him, and that the officers said that he would be treated only after he gave a statement regarding the offenses charged here.

At the hearing, defense counsel relied on two separate grounds in support of the suppression motion. Counsel first contended that a number of the police officers physically abused the defendant while he was in custody. Counsel also contended, as a separate ground warranting suppression of the defendant's statements, that the officers had withheld medical treatment for the defendant's gunshot wound. Although the defendant's written suppression motion also alleged that the defendant was not informed of his rights under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, prior to the interrogations, counsel did not make that contention at the hearing.

At the conclusion of the hearing, the trial judge granted the defendant's suppression motion. The trial judge noted that the evidence was uncontradicted that the police were aware, from the time of the defendant's arrest, that the defendant had sustained an injury to his finger. The trial judge additionally observed that paramedics had been called to the police station to treat codefendant Tyrone Strickland for hyperventilation. The court further noted that the evidence was contradictory whether the defendant ever requested any treatment. Without specifically deciding whether the defendant was physically abused by the police, the trial judge found that the defendant's "will was overborne by virtue of the

course of nature, of the condition that [the police officers] permitted him to remain in during the course of the interrogation, and the many hours he remained in custody without any assistance." Accordingly, the judge suppressed the defendant's statements as involuntary. The State later moved for reconsideration of the court's decision, arguing that the statement made by the defendant at the hospital was attenuated from the earlier coercive circumstances and therefore should not also be suppressed. The circuit judge denied the motion for reconsideration and reaffirmed his earlier ruling. The judge stated, "It is my understanding of the law that there can be no attenuation for an involuntary statement." It appears from the circuit judge's comments, both at the time of his initial ruling and later, on the State's motion for reconsideration, that it was the court's finding that the defendant had understood that he would not receive medical treatment until after he made a statement regarding the offenses charged here.

The State took an interlocutory appeal from the circuit court's suppression order (see 107 Ill. 2d R. 604(a)(1)), and the appellate court affirmed the judge's ruling (163 Ill. App. 3d 1158 (order under Supreme Court Rule 23 (107 Ill. 2d R. 23))). The appellate court held that the trial judge's finding that the police were aware of the defendant's condition and had withheld necessary medical treatment from the defendant was not against the manifest weight of the evidence. The appellate court also rejected the State's argument that the statement given by the defendant at the hospital was sufficiently attenuated to warrant its admission. Referring to the totality of the circumstances, including the brief period separating the defendant's last two statements, the presence of the same assistant State's Attorney at both those interrogations, and the assistant State's Attorney's use, at the final interrogation, of

notes from the previous session, the appellate court did not believe that the defendant's last statement was sufficiently attenuated from the earlier coercion to warrant its use as evidence. The appellate court therefore affirmed the circuit court's order suppressing all the defendant's statements.

The sole issue raised by the State in the present appeal is whether the statement made by the defendant at the hospital was properly suppressed. The State maintains that the form of coercion identified by the trial judge—the withholding of medical treatment—was no longer present at that time, and, moreover, that the taint from the earlier coercive circumstances was attenuated. The State does not challenge that portion of the appellate court judgment affirming the circuit court order suppressing the statements made by the defendant before his admission to the hospital.

That the first four interrogations of the defendant resulted in coerced and inadmissible statements does not automatically compel the suppression of all subsequent statements. (See *United States v. Bayer* (1947), 331 U.S. 532, 540-41, 91 L. Ed. 1654, 1660, 67 S. Ct. 1394, 1398.) "When a prior statement is actually coerced, the time that passes between confessions, the change in place of interrogations, and the change in identity of the interrogators all bear on whether that coercion has carried over into the second confession. [Citations.]" (*Oregon v. Elstad* (1985), 470 U.S. 298, 310, 84 L. Ed. 2d 222, 232-33, 105 S. Ct. 1285, 1293.) The State contends that application of those criteria to the present case demonstrates that the effects of the earlier coercive circumstances were attenuated and that the statement made by the defendant during the interrogation at the hospital was therefore admissible.

The State argues that the principal circumstance giving rise to the finding of coercion was absent from the

final interrogation, because by that time the defendant had received medical treatment. The State would conclude that the elimination of the constraint disabling the earlier statements rendered the defendant's subsequent statement admissible. In this regard, it may be noted that the assistant State's Attorney spoke with the defendant only after receiving permission to do so from the attending physician. We do not agree with the State, however, that the coercive circumstances were absent from the interrogation at the hospital. The questioning occurred in the emergency room area, and police officers were in the vicinity. Although a doctor had already examined the defendant by the time of the final interview, it appears that the defendant's finger was still in substantially the same condition as before. We do not mean to suggest that the State could not question the defendant until after reconstructive surgery was performed. But the defendant may have continued to believe that any further medical treatment was dependent on his present cooperation.

The record in this case shows that the defendant was taken into custody around 9 p.m. and that he gave the statement at issue a little more than 12 hours later. There were four other sessions of questioning compressed within that period. The final interrogation at the hospital occurred only 3½ hours after the immediately preceding period of questioning, which, the State does not contest, was part of the coercive chain. Also, the assistant State's Attorney who conducted the questioning was the same person who had conducted the immediately preceding interrogation. The State correctly observes that the defendant was unable to remember at the suppression hearing whether Rakoczy was present during the fourth interrogation. There is no doubt, however, that Rakoczy did in fact conduct the last two interrogations, as he testified, and we do not believe that the

defendant's uncertainty at the time of the suppression hearing signifies that the defendant was unaware at the time of the hospital interview that he was speaking with the same assistant State's Attorney who had questioned him several hours earlier.

In view of those circumstances, we cannot conclude that there was a ''break in the stream of events *** sufficient to insulate the [defendant's last] statement from the effect of all that went before." (*Clewis v. Texas* (1967), 386 U.S. 707, 710, 18 L. Ed. 2d 423, 427, 87 S. Ct. 1338, 1340; see also *Darwin v. Connecticut* (1968), 391 U.S. 346, 349, 20 L. Ed. 2d 630, 633-34, 88 S. Ct. 1488, 1489-90 (*per curiam*); *Beecher v. Alabama* (1967), 389 U.S. 35, 38, 19 L. Ed. 2d 35, 39, 88 S. Ct. 189, 191 (*per curiam*).) Accordingly, the lower courts were correct in suppressing the statement made by the defendant during the interrogation at the hospital emergency room.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

JUSTICE CALVO took no part in the consideration or decision of this case.