THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CLARENCE DAVIDSON, Defendant-Appellant.

First District (5th Division)   No. 1—88—1863

Opinion filed September 18, 1992.

Rita A. Fry, Public Defender, of Chicago (Shelton O. Green, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Gael M. O'Brien, and John P. O'Grady, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

On October 5, 1987, defendant Clarence Davidson was charged by indictment with attempted first degree murder, aggravated battery, and armed violence. Following a jury trial, he was found guilty of all three offenses and sentenced to 30 years in the Illinois Department of Corrections. He now appeals these convictions alleging that his motion to suppress was incorrectly denied, that he was denied a fair trial both by the erroneous rulings of the trial judge as well as by the prejudicial assertions and misstatements of law made by the prosecuting attorney, and finally that he received ineffective assistance of counsel. For the reasons which follow, we reverse the judgment of the trial court.

The following facts were adduced at trial: The incident in question occurred on September 20, 1987, at approximately 9:50 p.m. Davidson testified that he was carrying a tool box and walking with a friend, Melvin Douglas, when he saw and recognized Vincent Spraggins (the alleged victim) walking down the street toward him. Davidson also testified that Spraggins had a bottle of some type in his hand, and that he was afraid of him because Spraggins had attacked him the week before with a wine bottle and he had required neurosurgery for his injuries.

When Davidson observed Spraggins coming toward him, he set down the tool box and reached in for something with which to defend himself. The first thing he found was a knife. He ended up struggling with Spraggins and stabbing him. Afterwards, Davidson and his companion walked away and were arrested by the police.

Spraggins testified that he had just bought a bottle of beer and was on his way to Grant Park to drink it when two men (whom he had seen before, but with whom he had not "socialized" and could not recall fighting) approached him. One of them (later identified as Mel-

vin Douglas) inquired about a tool box and then asked if he could have some of Spraggins' beer. When Spraggins refused, the man punched him, knocking him to the ground, where Clarence Davidson proceeded to stab him three times in the chest.

Two additional witnesses, Greg Freeman and Lorraine Lorenzini, testified that they saw Davidson straddling Spraggins and stabbing him in the chest. They did not see the events which precipitated the stabbing.

Defendant's first contention on appeal is that the denial of his motion to suppress was manifestly erroneous not only because the prosecutors denied his requests for medical attention until he confessed, but also because they violated his right to remain silent. In support of his allegation that medical assistance was withheld, defendant testified (at the hearing on the motion to suppress) that he had repeatedly requested medical attention for a leg injury incurred during the fight. The police and assistant State's Attorneys who interrogated Davidson categorically denied any such requests. The Cook County Hospital doctor who finally treated Davidson on September 22, 1987 (the confession was given on September 21), testified that defendant had cellulitis, an infection of the soft tissue of the skin and the underlying tissues. (Davidson was hospitalized for five days for this infection and treated with intravenous antibiotics.) The doctor further stated that this infection was consistent with a wound which was greater than 24 hours old. In fact her notes indicated that Davidson had told hospital personnel that the wound was four days old, a statement which noticeably contradicts his sworn testimony that he received this injury in the fight on September 20.

■ Case law does support the proposition that where medical attention is withheld until a statement is given, such statement will be deemed to be involuntary. (*People v. Strickland* (1989), 129 Ill. 2d 550, 544 N.E.2d 758.) In *Strickland*, defendant had suffered a gunshot wound to the finger. In that case, the trial judge noted that the evidence was uncontradicted that the police were aware of defendant's injury from the time of his arrest (paramedics had been called to the station to treat a codefendant), even though there was contradictory evidence as to whether defendant had ever requested medical treatment. In the instant action, while there is medical evidence that defendant suffered a substantial infection, there is no such evidence (outside of defendant's testimony) that the police were aware of defendant's injury at the time of the arrest. There is no record, even at the time of the bond hearing, that defendant ever requested medical attention. In fact, defendant was routinely processed in Cook

County jail before he was referred to Cermak Hospital and then to Cook County Hospital for medical attention. Based on these facts, and defendant's contradictory statements as to whether the wound was received during the fight which precipitated his arrest or four days earlier, the trial judge found that defendant's claim that medical attention had been withheld was an "entirely fabricated assertion." Without underestimating the discomfort that defendant endured at the time of his admission to Cook County Hospital, we cannot say, as defendant urges, that the evidence supports a contrary conclusion.

■ Defendant further maintains that his confession was involuntary as the police did not "scrupulously honor" his right to remain silent. He argues that after he asserted his right to remain silent, a "continuing interrogation" ensued. The State, on the other hand, maintains that defendant never asserted his right to remain silent. A review of the testimony regarding this issue reveals that defendant's first interrogation took place at 4:30 a.m. on September 21 and lasted for 10 minutes. Those present were Detective Kelly, Detective Ward, and Assistant State's Attorney Brogan. At trial Kelly testified that Brogan advised defendant of his constitutional rights, after which defendant said he had no knowledge of the stabbing. Ward also said that Brogan advised defendant of his rights and that defendant never said that he didn't want to talk. (Detective Brogan did not testify.) The detectives' typed report of the interview indicated that "at this time [defendant] stated that he did not wish to give an account of this incident at this time." However, Kelly's progress notes (prepared closer to the time of the interview) reflected that defendant said that he had no knowledge of the incident. At the second and third interviews, conducted at 9:30 a.m. and 3 p.m., respectively, Detectives Tansey and Mcguire and Assistant State's Attorney Schreiber were present. Schreiber testified that Brogan's notes indicated that Davidson did not wish to speak at that time. Detective Tansey testified that when he read defendant *Miranda* warnings, defendant indicated his willingness to speak and at first denied any knowledge of the incident. However, after he was confronted with an account of the incident given by a codefendant, Davidson gave a statement. At the third interview, which took place after the detectives spoke with Spraggins (the alleged victim) at the hospital, Schreiber advised defendant of his constitutional rights, and defendant gave a full confession.

In finding that defendant's confession was voluntary, the trial judge reviewed the above conflicting testimony as to whether defendant said he had no knowledge of the incident, or whether what he said was that he did not want to talk. The judge explicitly stated that

"there's no merit whatsoever to the claim in the motion that the defendant asserted his right to remain silent. I believe Kelly. I believe Tansey. I believe the officers that testified here. I disbelieve the defendant." It is well settled that it is the function of the trier of fact to determine the credibility of the witnesses and the weight to be given their testimony. Where the evidence is in conflict, a court of review may not substitute its judgment for that of the trier of fact. (*People v. Rhodes* (1983), 119 Ill. App. 3d 1002, 1009-10, 457 N.E.2d 1300, 1307.) For this reason, we affirm the trial judge's determination that defendant's confession was freely and voluntarily given. The motion to suppress defendant's confession was therefore correctly denied.

■ Defendant next contends that he was denied a fair trial because he was prohibited by the court from proving the prior violent acts of the injured party. Defendant maintains that the court's refusal to admit evidence of the injured party's prior violent acts prevented him from presenting his theory of the incident (that the degree of force used by defendant was somehow justified by the alleged victim's propensity for violent acts). Case law supports the proposition that where, as in the instant action, the defense is self-defense, a defendant has the right to present evidence of prior violent and/or aggressive acts by the injured party. (*People v. Lynch* (1984), 104 Ill. 2d 194, 470 N.E.2d 1018.) In finding that a victim's three battery convictions were admissible, the *Lynch* court stated that "the defendant's knowledge of the victim's violent tendencies necessarily affects his perceptions of and reactions to the victim's behavior. The same deadly force that would be unreasonable in an altercation with a presumably peaceful citizen may be reasonable in response to similar behavior by a man of known violent *** tendencies." (*Lynch*, 104 Ill. 2d at 200.) In the case at bar, the trial court did allow some evidence of Spraggins' violent tendencies. Defendant himself testified to the claim that he was attacked the week before by Spraggins. This claim also appeared in defendant's confession, which was read into the record by Assistant State's Attorney Schreiber. Additionally, the defense attorney questioned Spraggins about a prior battery conviction, which he admitted, an aggravated assault conviction, which he denied, and the fight with defendant the week before, which he did not recall. Defendant was also allowed to introduce evidence of Spraggins' prior theft convictions, hospitalizations, and drug and alcohol dependencies. The trial judge found that based upon the above admissions, defendant already had a "mountain of evidence reflecting on the person's character." He therefore denied defendant's request to admit evidence that Sprag-

gins had threatened the staff at the mental hospital with bodily harm and had to be placed in restraints, stating that such evidence involved the invasion of confidentiality rights and could "perhaps lead the jury astray."

While substantial evidence of the victim's character was introduced, as noted by the trial judge, it did not all bear on his propensity for violence. Furthermore, a good part of the evidence which did substantiate the victim's violent tendencies consisted of the testimony of defendant, whose credibility was at issue throughout the trial. In *People v. Gossett* (1983), 115 Ill. App. 3d 655, 451 N.E.2d 280, the appellate court ordered a new trial when evidence of the victim's prior violent acts was excluded and defendant's testimony was the only evidence admitted to show that the deceased was the aggressor. The *Gossett* court stated that the defendant was the one "who was on trial, directly interested in the verdict, and these circumstances might very well affect his credit with the jury. He had a right to have the evidence of the disinterested witnesses which he offered heard." (*Gossett*, 115 Ill. App. 3d at 664.) Moreover, neither the *Gossett* nor *Lynch* decision balances competing interests in deciding to admit the evidence of prior violent acts. (But see *People v. Carini* (1986), 151 Ill. App. 3d 264, 502 N.E.2d 1206 (which found that the evidence was not admissible because there was no connection between the evidence offered and the asserted defense of compulsion); *People v. Ward* (1984), 101 Ill. 2d 443, 463 N.E.2d 696 (which held that the subject evidence was not admissible because it was too uncertain and speculative).) The incident at bar was not speculative, nor remote in time (actually occurring in February 1988, five months after the instant occurrence) and was undeniably connected to the self-defense argument. While we do find that the trial judge's evidentiary ruling was unduly narrow, we decline to find that this determination alone denied defendant a fair trial.

■ Defendant next alleges that he was denied a fair trial because of prejudicial assertions made during cross-examination, as well as misstatements of law and evidence made during closing arguments. Although defendant did not object to at least two of the improper questions, we may review this issue under the "plain error" doctrine. (134 Ill. 2d R. 615(a).) Defendant first maintains that the State's Attorney incompletely impeached him during cross-examination with unsubstantiated insinuations that he was using cocaine and heroin at the time of the incident. The objected-to testimony was as follows:

"Q. [Mr. Malevitis, Assistant State's Attorney]: As a matter of fact, when you were in Cook County Hospital for a scrape on

your knee, you told the personnel there at the hospital that you had just done heroin and cocaine, correct?

A. [Defendant]: No.

Q. [Mr. Malevitis]: You never said that?

Q. [Mr. Carey, Defense Attorney]: Objection, Judge.

Defendant: I told them I had used it before, but I didn't tell them I just got through using it.

Mr. Malevitis: I'll be prepared to prove it up."

Relying on the assistant State's Attorney's representation, the trial judge never ruled on the objection presented but allowed the questioning to proceed. However, the assistant State's Attorney never proved up his assertion that defendant was using cocaine and heroin just before the incident at issue. The State argues that defendant was not harmed by this incomplete impeachment because it was not repeated, it did not affect a major issue in the case, and that the use of heroin and cocaine would in fact make defendant's character "more mellow." While it is true that the assistant State's Attorney did not repeat these charges, it is not true that such insinuations did not affect defendant's credibility, nor can we rely on the State's unsubstantiated assertions that such insinuations actually worked to defendant's advantage. Furthermore, it is plain error for a prosecutor to imply that a defendant has committed other crimes than those for which he is on trial. (*People v. Thomas* (1974), 22 Ill. App. 3d 854, 318 N.E.2d 342.) Illinois courts have repeatedly held that the asking of leading questions with impeaching overtones or insinuations without presenting evidence to substantiate them is reversible error. (*People v. Nuccio* (1969), 43 Ill. 2d 375, 253 N.E.2d 353 (the guilt of the accused was not manifest and the substantial number of unsupported insinuations could have impeached the credibility of the defendant).) In *People v. Robinson* (1989), 189 Ill. App. 3d 323, 545 N.E.2d 268, the appellate court found that the prosecutor's persistent redirect examination tactic of substituting innuendo for proof discredited highly favorable defense testimony, and deprived defendant of a fair trial. In reversing defendant's conviction, the court said: "The tactic of constructing a foundation for impeachment without supporting evidence is condemned precisely because impeachment by innuendo is intolerable." (*Robinson*, 189 Ill. App. 3d 323, 339, 545 N.E.2d 268. But see *People v. Jurczak* (1986), 147 Ill. App. 3d 206, 497 N.E.2d 1332 (in which the prosecutor made an unsupported insinuation of misconduct on cross-examination without producing supporting evidence, and the appellate court found that reversal was only required where the insinuations were substantial, repeated, and definitely prejudicial). See also *People*

*v. Redman* (1985), 135 Ill. App. 3d 534, 481 N.E.2d 1272 (in which evidence of defendant's guilt was overwhelming, so the failure to complete impeachment was not found to be reversible error).) In the case at bar, the imperfected impeachment was not repeated, although it undeniably affected defendant's credibility, which in turn affected the finding of guilty.

As additional trial error, defendant notes that the assistant State's Attorney blatantly misstated the evidence in the dialogue which follows:

"Q. [Mr. Malevitis]: And when he walked towards you, he didn't have anything in his hands, did he?

A. [Defendant]: Yes, he had something in his hands.

Q. [Mr. Malevitis]: You didn't tell us that earlier, did you?

A. [Defendant]: I think I did."

Defendant's earlier testimony in fact established that when the victim walked towards him he had a large object in a paper bag. Although the trial judge did sustain defense attorney's objection to the above line of questioning, defendant was nevertheless prejudiced by the placing of the prosecutor's recollection and credibility against his own.

As further grounds of prosecutorial error, defendant argues misstatement of the law and the evidence during closing arguments. The prosecutor noticeably misstated the law when he told the jury that it would have to disbelieve all the State's witnesses in order to find defendant not guilty. Because defendant had confessed to the stabbing, the only issue to be decided was whether defendant had attacked the victim without provocation (and for revenge as argued by the State) or whether he had reacted in self-defense. The State's witnesses either did not see what started the incident (Greg Freeman, Lorraine Lorenzi, and William Estay) or their testimony concerned events subsequent to the incident (the arresting police officers' testimony). The only witness about whom it could fairly be said that either the defendant or he was lying was the assistant State's Attorney who took defendant's statement. Thus, to state that the jury would need to disbelieve all the State's witnesses in order to believe defendant clearly obscures the correct standard for jury consideration of evidence in a criminal case.

The Illinois Appellate Court considered this issue in *People v. Crossno* (1981), 93 Ill. App. 3d 808, 417 N.E.2d 827, and reversed defendant's murder and aggravated battery convictions finding that the prosecutor's argument that if the jurors acquitted the defendant they would have to find that the prosecution witnesses were lying, distorted the burden of proof and affected substantial rights of the

defendant. *Crossno* also involved other misstatements of law and improper prosecutorial comments, and the evidence regarding defendant's guilt was closely balanced. See also *United States v. Phillips* (1975), 527 F.2d 1021 (which reversed defendant's conviction when a prosecutor argued that if the jury were to find the defendant not guilty of distribution and attempted distribution of a controlled substance, it would also have to find that the government agent had violated defendant's civil rights, and that the prosecutor himself had conspired with him in bringing the case).

Defendant also argues that the prosecutor misstated the evidence in closing arguments when he misrepresented the contents of defendant's statement to the jury. In referring to defendant's statement, the prosecutor stated, "in his own statement [defendant] tells us that he got mad and he wanted revenge." Although the trial judge overruled defense attorney's objection to this characterization of defendant's statement, saying that the prosecutor was entitled to argue the reasonable inferences of the evidence, we note that defendant denied he was mad at the victim and wanted revenge and that his signed confession did not admit to this theory. While it may have been reasonable for the State to infer from the circumstances surrounding the incident that defendant was mad and wanted revenge, we question whether it was reasonable for the State to assert this as admitted in defendant's own statement and to so inform the jury.

While we find that none of the prosecutorial errors standing alone would mandate a reversal of the jury's verdict, we nevertheless conclude that the imperfected impeachment combined with an overly narrow evidentiary ruling, as well as misstatements of law and evidence, sufficiently deprived defendant of his right to a fair trial so as to require us to reverse and remand. Because we find that a new trial is warranted by these trial errors, we do not address defendant's further contention that he was deprived of effective assistance of counsel.

Reversed and remanded.

LORENZ and GORDON, JJ., concur.