THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID WOOD, Defendant-Appellant.

First District (2nd Division)    No. 1—01—3698

Opinion filed June 24, 2003.

Michael J. O'Rourke, Mitchell B. Katten, Richard F. Linden, and Michael Tecson, all of O'Rourke, McCloskey & Moody, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Kenneth

T. McCurry, and Katherine Blakey Cox, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAHILL delivered the opinion of the court:

Defendant was convicted of predatory criminal sexual assault and sentenced to 10 years in prison. He argues on appeal that: (1) the trial court improperly barred a psychologist and psychiatrist from testifying; (2) unsupported insinuations during cross-examination denied him a fair trial; (3) the State made improper remarks during closing argument; and (4) the cumulative effect of the claimed errors warrants a new trial. We affirm.

Roy Hok and his wife Emily Ou have two children, a daughter and a son. The children were three and seven, respectively, in 1999. Sim Wood, defendant's wife and Emily's sister, took care of the Hok children while the parents were at work. Roy picked up his children just before 5 p.m. each day. Defendant was charged with sexually assaulting his three-year-old niece, Hok's daughter, on January 5, 1999.

Roy testified at trial that he picked up his children at 4:40 p.m. on January 5, 1999. His son Jeremy told Roy that his sister had a secret. Roy asked his daughter what the secret was. She said that defendant told her not to tell. Roy demanded to know what the secret was. His daughter then said that defendant let her "suck his doing-doing." Roy took his daughter to a doctor that night. Roy admitted that his wife Emily left the children with her sister the next day, January 6. Emily and her sister did not discuss what happened the day before. Roy explained that there was no other babysitter for the children. Roy said that Emily picked up the children after only half a day. Roy explained that Emily's employer told her to pick up her children after learning what had happened the day before. Emily did not testify at trial. Roy made a police report on January 7, 1999.

Detective Joseph Licari testified that he interviewed defendant on January 8. Licari told defendant about his *Miranda* rights. Defendant said he understood his rights and signed a waiver form. Defendant first denied having sexual contact with his niece. But he later confessed in a written statement that his niece performed oral sex on him. Defendant said that he was masturbating in his office while watching a pornographic slide show. He told his niece not to tell anyone what had happened. Defendant's signed statement was published to the jury. He also consented to a search of his home and seizure of his computer.

Defendant was then interviewed by Assistant State's Attorney Peter Karlovics. Defendant again confessed to having sexual contact with his niece. In a written statement, defendant said he was

masturbating as he watched a pornographic slide show that depicted a woman performing oral sex on a man. Defendant's niece entered the room and asked what the woman on the computer was doing. Defendant had his niece come by his side and mimic the action on the computer. Defendant told his niece not to tell anyone about what had happened. Defendant's statement also said that he had been treated well by the police and that he gave his statement freely and voluntarily.

Meghan McGrath works for the Children's Advocacy Center. McGrath testified that she interviewed defendant's niece on January 11, 1999. McGrath asked the child who takes care of her when her mother is at work. The child responded that defendant made her "suck a doing-doing." The child told McGrath that she saw a picture on the computer of one woman and two boys. The woman was nude and was performing oral sex. The child showed McGrath where a "doing-doing" was by pointing between her legs. She told McGrath that defendant made her do what the woman on the computer was doing. The child also mentioned a person named Daniel during the interview in response to McGrath's question if anyone else had touched her. McGrath said that she had no trouble communicating with or understanding the child.

Defendant testified on his own behalf. Defendant said he came home at 3 p.m. on January 5, 1999. He went into his office and checked his email. Defendant then opened a pornographic slide show on his computer. Defendant was watching the slide show when his three-year-old niece came into the office. Defendant did not notice his niece until she asked what the woman on the computer was doing. The slide show depicted a woman performing oral sex on a man. Defendant turned off the show when he noticed his niece was in the room. Defendant told his niece not to tell anyone what she had seen. Defendant denied that he was masturbating.

Defendant testified that he was interviewed by Licari and Karlovics on January 8. Licari asked defendant what happened on January 5. Defendant said Licari immediately read his *Miranda* rights and that he understood and waived those rights. Defendant denied having sexual contact with his niece. Licari interrupted defendant, called him a liar and told him that he was not telling the truth. Defendant said that Licari screamed at him and told defendant to confess or face "the maximum penalty." Defendant started to cry. He continued to deny having sexual contact with his niece. Licari told defendant that it would be in his interest to say what Licari wanted to hear. Defendant believed Licari and then confessed.

Defendant testified that he was crying when he was interviewed

by Assistant State's Attorney Karlovics. Defendant said that he did not tell Karlovics about the discrepancies in his confession because Licari had warned him against changing his story. Defendant said his confessions were false and that he did not sexually abuse his niece.

During cross-examination, the State asked defendant if he had child pornography on his computer. Defense counsel objected on the ground that the question was beyond the scope of direct examination. The trial court sustained the objection.

The State had filed a motion *in limine* before trial to bar testimony about defendant's state of mind, depression and susceptibility to coercion. Defendant intended to present expert testimony by Drs. Sheldon Greenberg and Tricia Porter on these issues. Drs. Greenberg and Porter had testified at an earlier hearing on a motion to change the conditions of defendant's bond pending trial. The purpose of the bond hearing was to determine whether defendant, who was not in custody, could return home to his wife and two small children. Subsequently, the trial court granted the State's motion *in limine* in part as to state of mind, depression and susceptibility to coercion, but said that the motion would be revisited during trial.

The State again objected at trial when defendant tried to call Dr. Greenberg as a witness. The trial court sustained the State's objection and barred Dr. Greenberg from testifying. No ruling was made as to Dr. Porter.

During closing argument, the State asked the jurors to imagine themselves in the shoes of the victim and her family. Defendant did not object to this remark. The jury found defendant guilty.

Defendant first argues that the trial court erred in barring Dr. Greenwood and Dr. Porter from testifying about the involuntary nature of his confession. Defendant reasons that this evidence was "directly relevant" to a defense that his confession was the result of his being "susceptible to suggestion and coercion." Defendant claims that this defense requires expert testimony and he concludes that, absent this evidence, the jury did not have the chance to consider or evaluate his defense. We disagree.

■ We first note that defendant's argument is not relevant to the proposed testimony of Dr. Porter. Porter tested defendant for the limited purpose of determining his sexual preferences. But Porter did not conduct a full evaluation. Porter's report was limited to her interpretation of the test results. Porter found defendant was disturbed but did not share cognitive disorders generally present in child molesters. This testimony and report were used by the court in deciding whether to allow defendant to live with his wife and children pending trial. Porter never assessed defendant's alleged susceptibility

to suggestion or coercion. The trial court properly granted the State's motion *in limine* barring Porter's testimony at trial.

■ Defendant's argument as to Dr. Greenberg is waived for failure to make an adequate offer of proof. An offer of proof allows a reviewing court to determine whether evidence was properly excluded. *People v. Armstrong*, 183 Ill. 2d 130, 155, 700 N.E.2d 960 (1998). When evidence is refused, no appealable issue remains unless a formal offer of proof is made. *People v. Peeples*, 155 Ill. 2d 422, 457, 616 N.E.2d 294 (1993). An adequate offer of proof is made if counsel reveals, with particularity, the substance of the witness's anticipated answer. *People v. Andrews*, 146 Ill. 2d 413, 421, 588 N.E.2d 1126 (1992). The offer serves no purpose if it does not establish to both the trial and reviewing courts the admissibility of the testimony. *Andrews*, 146 Ill. 2d at 421.

The record here shows that defense counsel was less than forthcoming when asked by the trial court to state the purpose for which Dr. Greenberg would be called:

"THE COURT: Let's stop the ultimate speculation. What are they going to be testifying to?

DEFENSE COUNSEL: They are going to be testifying to the tests they *** conducted on the defendant.

THE COURT: For what purpose?

DEFENSE COUNSEL: For what purpose? All right, for his mental posture while in custody.

THE COURT: Which would be a state of mind?

DEFENSE COUNSEL: Could be a state of mind, Judge.

THE COURT: That is not going to be admissible. So what else?

DEFENSE COUNSEL: It could be.

THE COURT: It's not going to be admissible—state of mind.

DEFENSE COUNSEL: It could be with regard to his personality, Judge.

THE COURT: Why—are you saying that he was insane at the time?

DEFENSE COUNSEL: No.

THE COURT: Well, I'm just trying to see where you are going.

DEFENSE COUNSEL: Judge, as an expert this man is allowed to testify on any issue that will aid the jury in coming to their conclusion.

THE COURT: Only if it's relevant. It has to be relevant here.

DEFENSE COUNSEL: Well, I will have an opportunity to show the relevance of his testimony.

THE COURT: I'll tell you what, I'm going to ask you right now to make an offer of proof as to what they will testify to.

DEFENSE COUNSEL: All right, Dr. Greenberg is going to testify

in his capacity as a psychiatrist as to the tests he conducted on the defendant—psychological—or had conducted on the defendant. Okay, the results of those tests—he's going to testify as to the propensity of a child of tender years to give accurate recollection of an event. He's going to testify as to articles in existence that bear on the credibility of a child of tender years recalling events.

THE COURT: So that would be in the nature of rebuttal.

DEFENSE COUNSEL: Of course.

THE COURT: So they are only rebuttal witnesses?

DEFENSE COUNSEL: They may be, Judge, yes. You know when you list witnesses you have to list them for any purpose.

THE COURT: I understand but I'm just trying to get a handle on what the state is seeking to exclude, and some of which may be excludable and some of which may not. Do you want to comment on that Ms. State's Attorney.

PROSECUTOR: Well, Judge, so I'm assuming based on counsel's response to the Court, first of all he's said that they will talk about the propensity. Now is that with respect to the defendant? Because in the reports, Judge, that the doctors prepared, they basically state unequivocally that this defendant could not have committed the crime because he's not a pedophile. Now, obviously, Judge, that is the ultimate issue of fact that the jury is being asked to determine.

THE COURT: They are not going to be able to testify to—any ultimate issues.

DEFENSE COUNSEL: I understand that, Judge. But you know, Judge, I have no idea what evidence the state is going to bring in or who they're going to call, so I have to be ready to rebut any and all of it. And the state coming in and saying well, he can't call this witness, he can't call that witness because it may prejudice their case, then they shouldn't call any witnesses because it's going to prejudice mine.

THE COURT: No, there are certain things that they can't testify to. Obviously ultimate issues, which you know. ***

DEFENSE COUNSEL: Understood, Judge. ***

THE COURT: I'm trying to get a handle on—I'm not sure you are talking about the same things they excluded—I'm not sure counsel really knows what he wants to call them for as of yet or if he's even going to call them because he is saying they might just be rebuttal witnesses.

Let's exclude those things that are excludable. They can't be called for ultimate issues, they can't be called for anything that would give a conclusion of something that wasn't alleged as an affirmative defense so they couldn't testify to his sanity or insanity at the time.

DEFENSE COUNSEL: Granted."

The trial court granted the State's motion in part and said that it would be revisited. The State later objected to defendant's attempt to allude to Dr. Greenberg during trial:

"PROSECUTOR: Judge, again we're getting into the motion in limine, which was granted last week, regarding expert testimony. Again, there has been no affirmative defense filed by counsel and for him to ask in front of the jury after the motion in limine whether or not he saw a treating physician is totally improper.

THE COURT: He didn't ask him if he saw him. He just asked if he knew him and I presume he is going to get to that point.

PROSECUTOR: He is playing games. He knows exactly what he is doing which is why we filed the motion in limine. Obviously once it's out there, the Jury has heard it.

THE COURT: Offer of proof as to where you are going with this testimony.

DEFENSE COUNSEL: Okay. I'm going to offer that he did, in fact, see Arthur Himes, who is a psychologist, that he went there for the purpose of, A, getting back into his house and for treatment to find out what was going on with him at this time, okay? He will not say, you know, any conclusions that were done. He would just say he went to this man and for these problems, boom, boom, boom.

PROSECUTOR: And that is not relevant at trial, Judge. Maybe for sentencing purposes.

\* \* \*

THE COURT: That's totally irrelevant to this trial. That's totally irrelevant to this.

\*\*\*

What's the other point?

DEFENSE COUNSEL: He was treated for depression and he was treated for—you know, it's in Greenberg's report.

THE COURT: Who is Greenberg?

DEFENSE COUNSEL: He is the treating psychiatrist that Himes referred [defendant] to.

PROSECUTOR: It was one of the doctors that was the subject of my motion in limine, Judge.

THE COURT: I just don't see the relevancy of it to—that the fact that he was depressed or treated for depression other than the prejudicial effect it would have on the Jury. I'm not going to allow you to go into it, not with him. I don't know what your doctors are going to testify to but not with this testimony. Okay."

The State objected again when defendant tried to call Dr. Greenberg:

"PROSECUTOR: Judge, I believe Dr. Greenberg is about to be called now. There has been a motion in limine as to his testimony. I

have the reports of Dr. Greenberg. Our objection to his testimony was basically that he's going to be testifying to a lack of propensity on the part of the defendant to commit a crime and the involuntariness of his confession.

* * *

THE COURT: Did this doctor testify—just refresh my memory. Was there a question of understanding Miranda and did this doctor testify with regard to his ability to make knowing and voluntary statements?

PROSECUTOR: No. This doctor testified in a separate hearing to modify the defendant's bond and allow him to return to the home with his wife and two small children.

THE COURT: Well, that would have nothing to do with this. Let's get an offer of proof from counsel. Maybe this is premature.

* * *

DEFENSE COUNSEL: Judge, my offer of proof is that after the incident [defendant] went for—to a psychologist who referred him to Dr. Greenberg who is a psychiatrist. Doctor Greenberg has treated him. In order to treat him he ordered certain tests on him.

THE COURT: Did he do those tests?

DEFENSE COUNSEL: No. He had them done by an expert and returned to him, Okay?

THE COURT: So those tests are hearsay. Go ahead.

DEFENSE COUNSEL: And he used those tests in his treatment of him and that's what he's going to testify.

THE COURT: Treatment for what?

DEFENSE COUNSEL: Treatment for depression, treatment for—

THE COURT: You can't get into that. We've already made that determination. We're not going to get into that.

DEFENSE COUNSEL: Okay.

* * *

DEFENSE COUNSEL: Because of this incident, okay, my guy sought help immediately not for the things he did but because of the things that happened to him in the police station.

THE COURT: That is totally inflaming the jury and it would not be relevant or admissible in this case. *** [Y]ou know that. It's not admissible. I'm not going to allow it for those purposes. Okay. Anything else you want to put him in for?

DEFENSE COUNSEL: *Yeah, but I'm not going to mention those.*"

(Emphasis added.)

These excerpts reveal the trial court's repeated efforts to uncover the intended nature and purpose of Greenberg's testimony. The issue was revisited several times, with the trial court asking counsel for an offer of proof each time. Defense counsel instead gave ambiguous

answers about the proposed testimony of his experts and never claimed that the testimony would support a defense of coercion. Counsel told the court that Dr. Greenberg would be used as a rebuttal witness to challenge the accuracy of the child's testimony. Counsel also said Dr. Greenberg would testify about defendant's depression and the results of the psychological tests ordered. The trial court accepted the possibility of Dr. Greenberg as a rebuttal witness, depending on the State's evidence. But the trial court repeatedly told counsel that defendant's state of mind was not at issue and that evidence of it would not be admitted.

Counsel never made an adequate offer of proof to preserve the argument he now makes: that Dr. Greenberg's testimony was relevant and admissible to show that defendant's confession was not voluntary. When given a chance to make this alternate argument, defense counsel refused. But in his brief on appeal, defendant argues with specificity and reference to Greenberg's report, that Greenberg would have testified that defendant is easily intimidated and that intimidation caused him to confess to a crime he did not commit.

An offer of proof must be specific. *Peeples*, 155 Ill. 2d at 457. The lack of an offer of proof waives the issue. *Andrews*, 146 Ill. 2d at 421. Waiver aside, defendant's argument is unpersuasive.

Even though the trial court here denied defendant's motion to suppress his confession, finding it was made voluntarily, defendant still had the right to present evidence relevant to the credibility or weight of the confession. *People v. Gilliam*, 172 Ill. 2d 484, 512-13, 670 N.E.2d 606 (1996). But the admission of evidence remains within the discretion of the trial court and will not be reversed absent an abuse of discretion. *Gilliam*, 172 Ill. 2d at 513. Expert testimony is proper where such testimony is needed to explain matters beyond the common knowledge of ordinary persons and helps the fact finder in reaching a conclusion. *Gilliam*, 172 Ill. 2d at 513.

Dr. Greenberg's testimony that defendant was easily coerced and susceptible to intimidation is not beyond the understanding of ordinary citizens, nor is the concept difficult to understand. *Gilliam*, 172 Ill. 2d at 513. The jury could have reached the same conclusion as Dr. Greenberg based on defendant's testimony. *Gilliam*, 172 Ill. 2d at 513.

Defendant's reliance on *United States v. Hall*, 93 F.3d 1337 (7th Cir. 1996), is inapposite. *Hall*'s acceptance of expert testimony on the defendant's alleged false confession was based on a diagnosed personality disorder. *Hall*, 93 F.3d at 1341. The court held that expert testimony on this issue was relevant because "juries are unlikely to know that social scientists and psychologists have identified a personal-

ity disorder that will cause individuals to make false confessions.'' *Hall*, 93 F.3d at 1345. Defendant here was not diagnosed with a personality disorder. Dr. Greenberg merely opined, based on the personal history defendant related to him, that defendant was easily coerced. Dr. Greenberg's testimony was properly barred. Our conclusion makes it unnecessary to consider defendant's other two claims of error relating to exclusion of the expert testimony.

Defendant next argues that the State's repeated insinuations that defendant kept child pornography on his computer were designed to inflame the passions of the jury and denied him the right to a fair trial. Defendant claims that the insinuation suggested that he was a pedophile and was guilty of the charged offense.

Defendant testified on direct examination that he was viewing a pornographic slide show on his computer when his niece came into the office. Defendant testified that he immediately turned off the slide show. Defendant denied he sexually abused his niece. He admitted telling her not to tell anyone about what she had seen on the slide show. The State asked the following questions on cross-examination:

"PROSECUTOR: Were there any children in this pornographic slide show you were watching?

DEFENDANT: No.

PROSECUTOR: You had no pornographic slides of children performing sexual acts?

DEFENDANT: No.

PROSECUTOR: And this pornographic slide show that was downloaded from your hard drive?

DEFENDANT: Downloaded from the Internet.

\* \* \*

PROSECUTOR: That slide show and those pornographic slides were in your computer in the hard drive that day?

DEFENDANT: Correct.

PROSECUTOR: And they're still there, aren't they?

DEFENDANT: I wouldn't know. I don't have my computers.

PROSECUTOR: Well, they were in the computer that Detective Licari took from your home after you signed a consent to search, correct?

DEFENDANT: Right. I'm sure I was—had deleted that material.

\* \* \*

PROSECUTOR: So are you saying, Sir, that you had no pornographic slides of children in your hard drive?

DEFENDANT: No.

DEFENSE COUNSEL: Judge, I'm going to object to this line of questioning. It's beyond the scope of any direct content.

THE COURT: I'll sustain it as to that question.

\* \* \*

PROSECUTOR: And you indicated earlier that the slide show you were viewing only pictured adults?

DEFENDANT: Correct.

PROSECUTOR: Did it picture any—did it picture any adolescents?

DEFENDANT: No.

PROSECUTOR: Did it picture any children?

DEFENDANT: No.

PROSECUTOR: Did you have any pornographic slide show picturing children?

DEFENDANT: No.

DEFENSE COUNSEL: Judge, I'm going to object.

THE COURT: I'll sustain the objection unless you want the answer of 'no' to stand. Do you want to withdraw the objection, or do you want me to strike it?

DEFENSE COUNSEL: I think it should be stricken.

THE COURT: Strike the question, strike the answer, disregard it."

■ Defendant claims that this exchange implies that, through rebuttal evidence, the State was going to impeach defendant's testimony that he did not keep child pornography on his computer. This impeachment would not only establish possession of child pornography, an uncharged offense, but also insinuate that defendant had a sexual interest in minors and that he was guilty because of this deviant sexual interest. Defendant concludes that he was prejudiced by the State's failure to perfect its impeachment. We disagree.

Defendant overlooks that his defense counsel's objections to questions relating to child pornography were sustained by the trial court. The jury was instructed to disregard questions where the objections had been sustained or answers stricken. The claimed error was cured by the trial court's ruling and later instruction to the jury. *People v. Hall*, 194 Ill. 2d 305, 345-46, 743 N.E.2d 521 (2001) (error cured when trial court sustains objection and instructs jury to disregard).

Defendant also overlooks that his attorney's objection at trial was that the question was beyond the scope of direct examination. Counsel did not object on the ground argued here—that the question raised prejudicial insinuations. A specific objection to the admission of evidence waives all grounds not specified. *People v. Moore*, 171 Ill. 2d 74, 114, 662 N.E.2d 1215 (1996). Waiver aside, defendant's reliance on *People v. Nuccio*, 43 Ill. 2d 375, 253 N.E.2d 353 (1969), *People v. Davidson*, 235 Ill. App. 3d 605, 601 N.E.2d 1146 (1992), and *People v. Robinson*, 189 Ill. App. 3d 323, 545 N.E.2d 268 (1989), is misplaced.

*Nuccio* is inapposite. In *Nuccio*, the defendant was a police officer

convicted of murder. A self-defense theory was challenged on cross-examination by the State's insinuations that the defendant and his fellow officers engaged in misconduct. *Nuccio*, 43 Ill. 2d at 381. The implied accusations of misconduct were denied by all the police officers who testified on the defendant's behalf. *Nuccio*, 43 Ill. 2d at 384-92. On appeal to our supreme court, the defendant argued that the insinuations, unsupported by rebuttal evidence, denied him his right to a fair trial. *Nuccio*, 43 Ill. 2d at 381. The court agreed and rejected the State's waiver argument:

> "But there are, it seems to us, limits to the immunity to improper and prejudicial insinuations which judges are presumed to possess. Stripped of the haze created by the innuendoes, the shooting here was either done by an officer who was the target of a knife being thrown at him by decedent *** or it was the wanton killing testified to by the State's witnesses. Where, as here, the guilt of the accused is not manifest, but is dependent upon the degree of credibility accorded by the trier of fact to his testimony and that of the witnesses who testify on his behalf, and there appear in the record substantial numbers of unsupported insinuations which, if considered, could have seriously impeached the credibility of the defendant and his witnesses, and there is no indication of the court's awareness of this impropriety even though it is brought to his attention, it is our opinion that justice and fundamental fairness demand that the defendant be afforded a new trial free from such prejudicial misconduct." *Nuccio*, 43 Ill. 2d at 396.

Unlike *Nuccio*, evidence of defendant's guilt here is manifest and does not turn on the credibility of witnesses. Defendant twice confessed to the predatory criminal sexual assault charge. There is no prejudicial misconduct here that requires a new trial.

In *Davidson*, we found that the prosecutor implied that the defendant committed crimes other than those for which he was on trial. *Davidson*, 235 Ill. App. 3d at 611. But we noted that this prosecutorial error standing alone did not warrant reversal. Instead, it was the combined effect of all the instances of prosecutorial misconduct in the case that required a new trial. *Davidson*, 235 Ill. App. 3d at 613.

Like *Davidson*, a new trial was required in *Robinson* where the combined effect of a series of errors denied the defendant a fair trial. We found that the trial court first erred in admitting evidence about an unrelated collateral threat the defendant made. *Robinson*, 189 Ill. App. 3d at 332. The error was compounded by using the inadmissible evidence to establish the defendant's state of mind for a murder that happened more than five hours after the collateral threat was made. *Robinson*, 189 Ill. App. 3d at 332. The State capitalized on these errors during closing argument. *Robinson*, 189 Ill. App. 3d at 334. We

next found that the State improperly insinuated that a witness had identified the defendant's voice as the victim's attacker when there was no evidence that the witness had made such an identification. *Robinson*, 189 Ill. App. 3d at 338. The State compounded the error by relying on the voice identification as actual evidence during closing argument. *Robinson*, 189 Ill. App. 3d at 338-39. The State also erred when it implied, during cross-examination of a defense witness, that the defense attorney had destroyed a set of notes of witness interviews. *Robinson*, 189 Ill. App. 3d at 346. We found this conduct was designed to disparage the defense attorney in front of the jury. *Robinson*, 189 Ill. App. 3d at 347. We also found that the trial court erred in instructing the jury. *Robinson*, 189 Ill. App. 3d at 351.

Unlike *Robinson* and *Davidson*, there is no cascade of errors here, the combined effect of which requires a new trial. The questions did not capitalize on the erroneous admission of evidence nor were they analogous to the prosecutorial misconduct present in *Robinson* and *Davidson*.

■ Defendant next claims that the State made improper remarks during closing argument. Defendant argues that these remarks: (1) shifted the burden of proof; (2) misstated facts in evidence; and (3) improperly asked the jurors to put themselves in the victim's place.

Defendant failed to object to these remarks at trial and include the issues in his motion for a new trial. *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988). Plain error does not apply.

The plain error rule is invoked where the evidence is closely balanced or where the error is of such magnitude that there is a substantial risk that the defendant was denied a fair trial. *People v. Nielson*, 187 Ill. 2d 271, 297, 718 N.E.2d 131 (1999). There can be no plain error absent reversible error. *People v. Williams*, 193 Ill. 2d 306, 349, 739 N.E.2d 455 (2000).

Comments made in closing argument are considered in context in their entirety. *People v. Kliner*, 185 Ill. 2d 81, 154, 705 N.E.2d 850 (1998). Prosecutors are given wide latitude in making closing arguments and may argue facts and make reasonable inferences drawn from the evidence. *People v. Emerson*, 189 Ill. 2d 436, 488, 727 N.E.2d 302 (2000); *Kliner*, 185 Ill. 2d at 151. A jury verdict will be reversed only when improper comments cause substantial prejudice to a defendant. *Emerson*, 189 Ill. 2d at 488. A trial court is in the best position to determine whether improper comments caused prejudice. We will not reverse a trial court's determination absent an abuse of discretion. *Emerson*, 199 Ill. 2d at 488.

Defendant first claims that the State improperly shifted the burden of proof when the prosecutor commented on defendant's failure to call

certain witnesses. Defendant overlooks that the prosecutor's comments were invited by his attorney's remarks. Defense counsel argued:

"DEFENSE COUNSEL: I think the fact that the parents returned this child to [defendant's] home is the most significant evidence that you have that at the time the parents believed that this incident was over. Talk about evidence not there. Counsel argues the mother was in denial. Where is the mother? There's no denial evidence on the mother. The mother brought the child there. But then with the wheels turning, somebody talked to somebody, she comes back and gets the children and it's downhill from there.

\* \* \*

DEFENSE COUNSEL: Have we heard from Dr. Chin? No. Have we heard from her mother? No. Have we heard of any treatment? No.

\* \* \*

And they bring her back. Ladies and gentlemen, they bring her back. Does that sound logical? I submit to you that rather than denial as counsel says, they brought her back because they knew this did not happen. But then \*\*\* they start getting contacted \*\*\*.

All of a sudden, outside influences are there. And they come back and get the kids, trying to comply with whatever rules and what everybody is saying."

The prosecutor responded:

"You also won't get an instruction saying you need physical evidence, you need harm. Look for it. It won't be there because we don't have to show that. Counsel is telling you, 'Well, they didn't bring [the mother in]. And they didn't bring in Dr. Chin.' Well, you know what, you won't get an instruction saying the State has to parade in here every witness. Counsel has the same subpoena powers as the State.

He makes a big deal about [the mother] taking [the child] back there the next day. Well, you heard Roy Hok. She took her there for a few hours. She went to work. This is her child's care taker, her sister. Working mothers face this dilemma every day. You just can't not go to work. She comes home. [The mother] is scheduled to go to work the next morning. What? Who's going to keep her? She goes to work. And her boss—I mean, 'Are you nuts, go get your children. Don't worry about work today.' And you heard Roy, she went back and she got them.

Stay focused on the fact. The fact she took her there the other day just says she's a \*\*\* working mother and she had a big dilemma. But that is not your focus.

Your focus is the elements of the crime \*\*\*."

These remarks did not shift the burden of proof onto defendant to produce a witness. The comments instead redirected the jury's atten-

tion to the elements of the offense, which the State argued it had proven beyond a reasonable doubt. Defendant's reliance on *People v. Armstead*, 322 Ill. App. 3d 1, 748 N.E.2d 691 (2001), is misplaced.

In *Armstead*, the prosecutor commented on the defendant's failure to produce alibi witnesses. We found the comment improper because it suggested that the defendant had a burden to produce witnesses to support an alibi defense, which burden is contrary to law. *Armstead*, 322 Ill. App. 3d at 16. These are not the facts here.

Defense counsel's comments here suggested that the State's failure to call certain witnesses prevented it from proving every element of the offense. The State's response corrected this impression and told the jury that the State was only required to call those witnesses that satisfied its burden. Unlike *Armstead*, the State's remarks here did not imply that defendant was required to prove anything. The remarks here were clearly invited by defense counsel. *Kliner*, 185 Ill. 2d at 154.

Defendant also argues that the State's remarks about Emily and her reason for picking up her daughter after only half a day improperly relied on hearsay evidence. We disagree.

Defendant complains that hearsay evidence about what Emily was told that caused her to leave work and pick up her daughter was elicited during Roy's testimony. Defendant overlooks that his attorney elicited this evidence on Roy's cross-examination and is now barred from complaining that the State referred to the evidence in closing argument. *People v. Payne*, 98 Ill. 2d 45, 50, 456 N.E.2d 44 (1983). Since the remark was based on evidence in the record, comment on it was proper. *Emerson*, 189 Ill. 2d at 487.

Defendant next argues that the State improperly told the jury to place itself in the shoes of the victim in this case. We agree with defendant that these comments were improper because the State is not free to "invite the jurors to enter into some sort of empathetic identification with" the victim. *People v. Spreitzer*, 123 Ill. 2d 1, 38, 525 N.E.2d 30 (1988). Although improper, reversal is not warranted because the remarks were not so prejudicial as to deprive defendant of a fair trial. *Spreitzer*, 123 Ill. 2d at 38; *People v. Billups*, 318 Ill. App. 3d 948, 960, 742 N.E.2d 1261 (2001). The case on which defendant relies also declined to reverse a conviction based on a similar remark. In *People v. Fortson*, 110 Ill. App. 2d 206, 249 N.E.2d 260 (1969), we found improper a State comment telling the jury to identify with the victim. We affirmed the conviction despite the error because of a lack of prejudice to the defendant. *Fortson*, 110 Ill. App. 2d at 216.

The evidence of guilt here was overwhelming. The State's comments, although improper, did not cause substantial prejudice to defendant. *Emerson*, 189 Ill. 2d at 488. But we do add our voice to the

appellate concern about the tactics and oratory of prosecutors in recent years. See *People v. Blue*, 189 Ill. 2d 99, 126-34, 724 N.E.2d 920 (2000). We know the State's Attorney of Cook County has continuing legal education programs aimed at reducing prosecutorial error. But we are often left with the impression that prosecutors are filching trial oratory techniques from television melodramas. The solution may be for prosecutors to spend less time imitating television lawyers and more time studying transcripts of model prosecutors from the State's Attorney's archives.

■ Defendant last argues that the cumulative effect of the claimed errors warrants a new trial. We disagree. "The whole can be no greater than the sum of its parts ***." *People v. Albanese*, 102 Ill. 2d 54, 82-83, 464 N.E.2d 206 (1984). Generally, there is no cumulative error where none of the alleged errors amounts to reversible error. *People v. Doyle*, 328 Ill. App. 3d 1, 15, 765 N.E.2d 85 (2002).

The judgment of the trial court is affirmed.

Affirmed.

BURKE and GARCIA, JJ., concur.