NOTICE

Decision filed 07/21/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 220666-U

NO. 5-22-0666

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 20-CF-82 |
| | ) | |
| CHRISTOPHER TORRY, | ) | Honorable |
| | ) | Roger B. Webber, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BOIE delivered the judgment of the court.
Justices Moore and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the judgment of the trial court where the trial court's findings on the defendant's claims of ineffective assistance of counsel were not manifestly erroneous, the defendant failed to establish that a serious provocation applied in sentencing, and any issue regarding the aggravating factors considered upon the reconsideration of his sentence is forfeited.

¶ 2    The defendant, Christopher Torry, was convicted on October 27, 2020, of attempted first degree murder (720 ILCS 5/8-4(a) (West 2020)), domestic battery (*id.* § 12-3.2(a)(1)), and aggravated battery (*id.* § 12-3.05(f)(1)). The defendant timely appealed, and the reviewing court remanded the matter to the trial court with directions to conduct a preliminary *Krankel* inquiry[1] into the defendant's *pro se* allegations of ineffective assistance of counsel. *People v. Torry*, 2022

_____

[1]Hearings investigating *pro se* claims of ineffective assistance of counsel held pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), are commonly referred to as a *Krankel* inquiry or a *Krankel* hearing.

1

IL App (4th) 210004-U, ¶ 3. The reviewing court declined to address the defendant's other two issues raised on direct appeal based on the remand determination. *Id.*

¶ 3    Upon remand, the trial court conducted a preliminary *Krankel* inquiry on October 3, 2022, and determined that the defendant's allegations of ineffective assistance of trial counsel did not warrant the appointment of independent counsel. The defendant again appealed.

¶ 4    In this subsequent appeal, the defendant raises the issue of whether the trial court erred in determining that the defendant's ineffective assistance of counsel claims did not warrant the appointment of independent counsel. The defendant also raises the two issues that were not addressed in his prior appeal; that is, whether the trial court erred at sentencing in finding that the offenses were not accompanied by sudden and intense passion resulting from serious provocation, and whether the trial court erred in sentencing when its decision was based, in part, on the alleged threats that the defendant had made to his girlfriend. For the following reasons, we affirm the judgment of the trial court.

¶ 5                                    I. BACKGROUND

¶ 6    The defendant's convictions stem from an incident that occurred on January 21, 2020, when the defendant found the woman he was living with in bed with another man, and began to physically batter both. The defendant then left the room, retrieved a knife, and stabbed the man several times while the man was attempting to flee. The matter proceeded to a jury trial conducted on October 26 and 27, 2020. The jury found the defendant guilty of attempted first degree murder, domestic battery, and aggravated battery.

¶ 7    The defendant was sentenced on December 4, 2020. At sentencing, the woman read a victim impact statement in which she stated that the defendant had assisted her in obtaining an apartment in Champaign, Illinois, in July 2019, but then the defendant took the keys to the

2

apartment and returned to Chicago. From August to November 2019, the woman stated that she lived with her father in Chicago. In December 2019, she stated that she had informed the defendant that she was planning on moving out. The woman also stated that the defendant blamed her for the incident and showed no remorse for her or the male victim.

¶ 8    The defendant testified that he had known the woman since kindergarten, that they had been dating for approximately a year, and that they had dated four or five months prior to moving in together. The defendant also testified that they were not married, did not have any children together, but that they were in a relationship at the time of the incident. The defendant testified that, although things had been "rocky" starting around December 2019, he "felt hurt, heartbroken" and shocked upon discovering the woman in bed with another man.

¶ 9    The defendant requested that the trial court sentence him pursuant to section 8-4(c)(1)(E) of the Criminal Code of 2012 (Code) (720 ILCS 5/8-4(c)(1)(E) (West 2020)), which states that a person convicted of attempted first degree murder is sentenced for a Class X felony, except if he or she was acting under a sudden and intense passion resulting from serious provocation. Section 8-4(c)(1)(E) further states that "had the individual the defendant endeavored to kill dies, the defendant would have negligently or accidentally cause that death." *Id.* If proven by a preponderance of the evidence, then the sentence for attempted murder is the sentence for a Class 1 felony. *Id.*

¶ 10    Upon completion of the testimony and arguments, the trial court found that, along with proving a sudden and intense passion, the remaining portion of section 8-4(c)(1)(E) had to be proven to qualify for sentencing as a Class 1 felony. Since the male victim survived the attack, the trial court denied the defendant's request for sentencing as a Class 1 felony.

3

¶ 11    The trial court then sentenced the defendant to 20 years' incarceration within the Illinois Department of Corrections on his conviction of attempted first degree murder and 180 days' incarceration within the Champaign County Correctional Center on his conviction of domestic battery. The defendant's conviction of aggravated battery was vacated under the doctrine of one act, one crime.[2]

¶ 12    The defendant filed a motion to reconsider sentence on December 22, 2020. At the hearing on December 28, 2020, section 8-4(c)(1)(E) was again addressed. The trial court indicated that, upon further reflection and rereading the case law presented at sentencing, it now believed that that "final requirement of showing accidental or negligent cause of death to only apply in a situation where there's transferred intent." As such, the trial court found "that on the facts of this case, the Defendant is not required to prove that the death or that the death of the person would have been accidental or negligent." The trial court further indicated, however, that it "doesn't completely change the analysis."

¶ 13    The trial court went on to address the initial portion of section 8-4(c)(1)(E), stating that case law indicated that "it's not enough that the person is acting under sudden—sudden and intense provocation, but it has to have been endeavored by serious provocation." The trial court stated that our supreme court has identified the only categories of serious provocation as a substantial physical injury or assault, mutual quarrel or combat, illegal arrest, and adultery with the offender's spouse. The trial court then noted that the defendant was not married, and cited two cases wherein reviewing courts have declined to apply the standard to long-term monogamous relationship. As such, the trial court again found that section 8-4(c)(1)(E) did not apply.

---

[2]The doctrine of one act, one crime provides that a trial court shall not impose consecutive sentences for offenses when those offenses are based on the same physical act. *People v. Coats*, 2018 IL 121926, ¶ 11.

¶ 14 The trial court did, however, state that when it looked backed over the sentencing factors such as the defendant's age, lack of prior criminal history, and steady work history, "that perhaps 20 years is a little bit harsh." Therefore, the trial court stated that it had reconsidered the defendant's sentence and was reducing the defendant's sentence for attempted first degree murder to 15 years' incarceration.

¶ 15 The defendant appealed. On direct appeal, the defendant raised three issues, one of which was whether the trial court failed to conduct a preliminary inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), regarding the defendant's *pro se* claims of ineffective assistance of trial counsel. *Torry*, 2022 IL App (4th) 210004-U, ¶ 3. The reviewing court determined that remand was required with directions to the trial court to conduct a preliminary *Krankel* inquiry and, as such, declined to address the defendant's other claims. *Id.*

¶ 16 On remand, the trial court conducted a preliminary *Krankel* inquiry into the defendant's *pro se* ineffective assistance of counsel claims on October 3, 2022. Upon completion of the preliminary inquiry, the trial court found no neglect on the part of the defendant's trial counsel and declined to appoint an independent attorney to further investigate the defendant's claims. In the interest of brevity, any other background facts relevant to the issues on appeal will be included in our analysis below.

¶ 17                                    II. ANALYSIS

¶ 18 The defendant now raises the issue of whether the trial court erred in determining that the defendant's ineffective assistance of counsel claims did not warrant the appointment of independent counsel. The defendant also raises the issues of whether the trial court erred at sentencing in finding that the offenses were not accompanied by sudden and intense passion resulting from serious provocation, and whether the trial court erred in sentencing when its

5

decision was based, in part, on the alleged threats that the defendant had made to the woman. We will address these issues in the order raised.

¶ 19                                    A. *Krankel* Inquiry

¶ 20    The defendant first argues that the trial court erred in determining that defendant's claims of ineffective assistance of trial counsel did not warrant the appointment of independent counsel. Specifically, the defendant argues that his claim that trial counsel failed to contact potential witnesses demonstrated possible neglect of the case. The defendant states that the potential witnesses would have testified that the defendant was in a relationship with the woman at the time of the incident. As such, their testimony would have rebutted the woman's testimony that she and the defendant had discontinued their relationship in December 2019, and that she was preparing to move out. The defendant argues that he could not succeed in arguing that the stabbing was a result of sudden and intense passion without these witnesses establishing the status of his relationship with the woman at the time of the incident.

¶ 21    We first note that the defendant raised several claims of ineffective assistance of trial counsel at the *Krankel* inquiry, but on appeal, only provides an argument in his opening brief regarding trial counsel's failure to investigate and call potential witnesses. Therefore, any and all challenges to the trial court's findings regarding the defendant's other claims of ineffective assistance of trial counsel are forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral arguments, or on petition for rehearing.").

¶ 22    An initial *Krankel* inquiry by the trial court "serves the narrow purpose of allowing the trial court to decide whether to appoint independent counsel to argue a defendant's *pro se* posttrial ineffective assistance claims." *People v. Patrick*, 2011 IL 111666, ¶ 39. New counsel is not

6

automatically appointed in every case where a defendant raises a *pro se* claim of ineffective assistance of counsel. *People v. Jackson*, 2020 IL 124112, ¶ 97. Rather, the trial court must first examine the factual basis of the claim and if the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the trial court need not appoint new counsel. *Id.* New counsel should be appointed only if the defendant's allegations show possible neglect of the case. *People v. Chapman*, 194 Ill. 2d 186, 230 (2000).

¶ 23    We review *de novo* the issue of whether the trial court properly conducted a preliminary *Krankel* inquiry. *People v. Jolly*, 2014 IL 117142, ¶ 28. *De novo* review means that this court owes no deference to the trial court and performs the same analysis that a trial judge would perform. *People v. Robinson*, 2017 IL App (1st) 161595. If, however, the trial court properly conducted the *Krankel* preliminary inquiry and reached a determination on the merits of the defendant's claims, we will reverse only if the trial court's finding was manifestly erroneous. *Jackson*, 2020 IL 124112, ¶ 98. "Manifest error is error that is clearly evident, plain, and indisputable." *Id.*

¶ 24    In order to succeed on a claim of ineffective assistance of trial counsel, a defendant must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under *Strickland*, to prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Id.* More specifically, the defendant must demonstrate that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A defendant must satisfy both prongs of the *Strickland* test to

7

prevail and the failure to establish either prong precludes the finding of ineffective assistance of counsel. *People v. Henderson*, 2013 IL 114040, ¶ 11.

¶ 25    Here, the trial court found as follows:

> "THE COURT: With respect to your other claims about [counsel] failing to identify and investigate witnesses. The witnesses you identified, basically, you told me they all would have testified that you were in a relationship with your girlfriend at the time of this incident. That evidence was clear to me and I believe to the jury trial—to the jurors that heard your case. So whether it came about through the cross-examination of a State's witness or by parading all of the witnesses you named, the fact that you were involved in a relationship with that woman and caught her in bed with another guy doesn't necessarily help your argument. In fact, it might cause a jury to be more likely convinced you had good reason to be really angry and try to kill the guy. So I'm not convinced that calling those witnesses would have likely impacted the outcome given all of the other evidence ***."

¶ 26    We agree with the trial court that there was not a reasonable probability that, but for counsel's failure to call the potential witnesses, the result of the trial would have been different. In opening and closing arguments, even the State acknowledged to the jury that the defendant and his girlfriend disagreed as to the status of their relationship at the time of offense. It was the function of the jury to determine the credibility of the witnesses and the weight to be given their testimony. *People v. Davidson*, 235 Ill. App. 3d 605, 609 (1992). We do not find that trial counsel's failure to call additional witnesses regarding the relationship rendered the result of the trial unreliable or the proceedings fundamentally unfair since that information, as the trial court noted, was already

8

before the jury. As such, the defendant has failed to meet the prejudice prong of the *Strickland* test and has failed to establish ineffective assistance of trial counsel.

¶ 27 The trial court went through each of the defendant's allegations, allowing the defendant to state his claims and the alleged conduct of trial counsel that the defendant believed gave support to that claim. The trial court asked questions to clarify and ensure its understanding of the defendant's claims. Thus, we find that the trial court conducted a proper preliminary *Krankel* inquiry. We further find no error that is clearly evident, plain, and indisputable concerning the trial court's determination that the defendant's ineffective assistance of counsel allegation regarding potential witnesses did not demonstrate possible neglect of the case by trial counsel. Accordingly, we find that the trial court's determination not to appoint independent counsel to argue a defendant's *pro se* ineffective assistance of counsel claims was not manifestly erroneous.

¶ 28                                     B. Serious Provocation

¶ 29 Next, the defendant argues that the trial court erred in finding that the offenses were not accompanied by sudden and intense passion resulting from serious provocation. As such, the defendant argues that he should have been sentenced pursuant to section 8-4(c)(1)(E) of the Code (720 ILCS 5/8-4(c)(1)(E) (West 2020)). Section 8-4(c)(1)(E) states as follows:

> "(E) if the defendant proves by a preponderance of the evidence at sentencing that, at the time of the attempted murder, he or she was acting under a sudden and intense passion resulting from serious provocation by the individual whom the defendant endeavored to kill, or another, and, had the individual the defendant endeavored to kill died, the defendant would have negligently or accidentally caused that death, then the sentence for the attempted murder is the sentence for a Class 1 felony[.]" *Id.*

9

¶ 30    At the hearing on the defendant's motion for reconsideration, the trial court stated that our supreme court has identified only four categories of serious provocation and the trial court was correct. In *People v. Haynes*, 2024 IL 129795, our supreme court stated that it had "established four categories of serious provocation: (1) substantial physical injury or assault, (2) mutual quarrel or combat, (3) illegal arrest, and (4) adultery with the offender's spouse." *Id.* ¶ 36. The defendant, however, asks this court to undergo a statutory construction analysis and find that the plain language of section 8-4(c)(1)(E) encompasses different situations on a case-by-case basis depending on the factual circumstances of the offense at issue, and as such, would apply to longstanding relationships comparable to that of husband and wife.

¶ 31    We decline to do so as we find the reasoning in *People v. McCarthy*, 132 Ill. 2d 331 (1989), instructive on this issue. In *McCarthy*, our supreme court noted that the limitation extending a partial defense, like the one recognized in instances of spousal adultery, had been questioned where there was a longstanding relationship comparable to that of husband and wife. *Id.* at 341. The *McCarthy* court noted that many of the same reasons that warrant recognition of adultery with a spouse as sufficient provocation would also be applicable in the absence of a marital relationship. *Id.* The *McCarthy* court, however, declined to determine "whether the category of serious provocation already recognized in instances of spousal adultery should be enlarged to include unmarried persons who share a marital-type relationship." *Id.* at 342. The *McCarthy* court declined to address the issue since the relationship at issue in that matter had ended before the offense had occurred. *Id.*

¶ 32    In our present case, there was conflicting testimony of the status of the defendant's relationship with the woman. The woman maintained that the relationship had ended in December 2019, and the defendant maintained that the relationship had not terminated. Taking the

defendant's position that the relationship was ongoing as true for the purpose of our analysis, we find that the defendant could still not have established that he and the woman were in a longstanding relationship comparable to that of husband and wife. The defendant stated that they did not have any children together and had been dating "four or five months" prior to obtaining the apartment in July 2019. Upon obtaining the apartment, they moved out of the apartment from August to November 2019, and the defendant admitted that things had been "rocky" starting in December 2019. Although the defendant refers to the woman as his "longtime girlfriend," the facts indicate that they had dated for less than a year and had lived together for, at most, a couple of months prior to the incident.

¶ 33    Therefore, like the *McCarthy* court, we find no need to address the issue of whether serious provocation should be enlarged to include unmarried persons in a longstanding relationship comparable to that of husband and wife where such a relationship cannot be established in this case. Accordingly, we find that the trial court did not err in failing to sentence the defendant pursuant to section 8-4(c)(1)(E).

¶ 34                                    C. Threats

¶ 35    The last issue the defendant argues on appeal is that the case should be remanded for a new sentencing hearing because the trial court based its sentencing decision, in part, on threats the defendant allegedly made to the woman, but the record rebuts the trial court's recollection of the defendant's conduct. The defendant acknowledges that this issue was not preserved, but asks this court to review the issue under the doctrine of plain error.

¶ 36    The doctrine of plain error is a narrow and limited exception to the general rule of procedural default which allows plain errors or defects affecting substantial rights to be noticed although the error or defect was not brought to the attention of the trial court. *People v. Hillier*,

11

237 Ill. 2d 539, 545 (2010). An otherwise unpreserved error may be noticed under the plain error doctrine, codified in Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967), if the defendant first demonstrates that a clear or obvious error occurred and then shows that either "(1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Id.* The respondent has the burden of persuasion under either prong of the plain error doctrine and if the respondent fails to meet his or her burden of persuasion, the reviewing court applies the procedural default. *Id.* The initial step in conducting a plain error analysis is to determine whether an error occurred. *People v. Walker*, 232 Ill. 3d 113, 124 (2009). Without reversible error, there can be no plain error. *People v. Naylor*, 229 Ill. 2d 584, 602 (2008).

¶ 37 Trial courts enjoy broad discretion in determining the appropriate sentence to impose. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). This is because the trial judge, who had the opportunity to observe the defendant, is in a better position than we are to weigh the relevant factors. *Id.* at 213. In reviewing a sentence imposed, this court does not focus on a few words or statements, but considers the entire record as a whole. *People v. Ward*, 113 Ill. 2d 516, 526-27 (1986).

¶ 38 We will not set aside a defendant's sentence on appeal unless it constitutes an abuse of discretion. *People v. Busse*, 2016 IL App (1st) 142941, ¶ 20. A sentence that is within the statutory range for the offense is presumptively appropriate. *Id.* As such, we will not overturn a sentence within that range unless it is "greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *People v. Fern*, 189 Ill. 2d 48, 54 (1999).

¶ 39 In determining an appropriate sentence, the trial court is required to consider all pertinent factors in mitigation and aggravation. *Busse*, 2016 IL App (1st) 142941, ¶ 22. The trial court is not required to specify which factors it finds relevant or how much weight it assigns to each factor.

*People v. Perkins*, 408 Ill. App. 3d 752, 763 (2011). Although the trial court must consider any mitigating factors that are present, it is not required to weigh such factors more heavily than it weighs aggravating factors, such as the seriousness of the crime. *People v. Weiser*, 2013 IL App (5th) 120055, ¶ 32. Indeed, the seriousness of the crime is the most important factor for the trial court to consider. *Id.*; *Busse*, 2016 IL App (1st) 142941, ¶ 28.

¶ 40    Here, the defendant does not argue that the trial court committed any errors in imposing the defendant's initial sentence, but argues that the trial court considered an improper factor at the hearing on the defendant's motion for reconsideration. Specifically, the defendant argues that the trial court stated that the defendant had "began screaming language that could only be construed as threatening and profane" in the direction of the woman after the verdict was read. The defendant acknowledges that he was escorted out of the courtroom due to his outburst, but argues there is no indication in the report of proceedings that he ever addressed or threatened the woman.

¶ 41    The defendant also argues that the trial court incorrectly stated that he had yelled and threatened the woman after his sentence was imposed. Again, the defendant argues that the report of proceedings does not demonstrate any inappropriate conduct by the defendant at the initial sentencing hearing.

¶ 42    With regard to the incident after the verdict, the report of proceedings demonstrates that the defendant stated: "Man, get me the f*** out of here. Twenty-years. F*** you." Although the report of proceedings does not indicate the direction the defendant was facing at the time, the trial court did not state that the defendant *had* threatened the woman, only that the language could be *construed* as threatening and profane. Concerning the incident at the sentencing hearing, a review of the record of proceedings does not reflect any inappropriate conduct by the defendant. However, at the motion for reconsideration, the trial court acknowledged that "I don't know whether the

court reporter caught that all or not, but it was clear that your anger issues and your lack of impulse control do create a potential for future dangerousness." As such, the report of proceedings does demonstrate that the trial court had observed an outburst by the defendant at sentencing, even if the incident was not recorded by the court reporter.

¶ 43 In *People v. Heider*, 231 Ill. 2d 1, 20-21 (2008), our supreme court stated that a trial court could consider a lack of impulse control as an aggravating factor in determining whether there was a potential for future dangerousness. Here, the trial judge, who had the opportunity to observe the defendant's conduct at trial and sentencing, considered the defendant's conduct at trial and after sentencing as indicators of the defendant's lack of impulse control. As such, based upon the specific facts of this case, we find no error in the trial court's consideration of these incidents concerning a lack of impulse control in aggravation during its reconsideration of the defendant's sentence. Accordingly, the defendant has failed to meet his burden of persuasion under the plain error doctrine, and the procedural default of forfeiture applies.

¶ 44                                    III. CONCLUSION

¶ 45 For the foregoing reasons, we find that the trial court conducted a proper inquiry into the defendant's claim of ineffective assistance of counsel and that it was not manifestly erroneous for the trial court to decline to appoint new counsel, that the defendant failed to establish that serious provocation applied in sentencing, and that any issue regarding the aggravating factors considered upon the reconsideration of his sentence is forfeited. Therefore, we affirm the judgment of Champaign County trial court.

¶ 46 Affirmed.

14